# COURT OF APPEALS

OF

## NORTH CAROLINA

AT

RALEIGH

CLIFTON BOWMAN
v.
COX TOYOTA SCION, EMPLOYER, AND STONEWOOD INSURANCE CO., CARRIER

No. COA12-709

Filed 4 December 2012

1. **Workers' Compensation—evidence—authentication-based objection—challenged in Form 44**

    Plaintiff in a Workers' Compensation case was not prevented from raising an authentication-based objection to defendants' video surveillance exhibits before the Commission. Plaintiff challenged the admissibility of Defendants' exhibits in his Industrial Commission Form 44.

2. **Workers' Compensation—evidence—video surveillance exhibits—sufficient authentication**

    The Industrial Commission erred in a Workers' Compensation case by excluding defendants' video surveillance exhibits from the evidentiary record. Defendants sufficiently authenticated the videos.

Appeal by defendants from Opinion and Award entered 15 March 2012 by the North Carolina Industrial Commission. Heard in the Court of Appeals 8 October 2012.

*The Deuterman Law Group, by Daniel L. Deuterman and Casey S. Francis, for Plaintiff-appellee.*

1

*Brooks, Stevens & Pope, P.A., by Bambee B. Blake and Ginny P. Lanier, for Defendant-appellants.*

ERVIN, Judge.

Defendants Cox Toyota Scion and Stonewood Insurance Company appeal from the Commission order awarding medical and disability benefits to Plaintiff Clifton Bowman. On appeal, Defendants contend that the Commission erred by declining to admit three surveillance videos marked for identification as Defendants' Exhibits 1, 2, and 3 on the grounds that (1) Plaintiff waived his right to seek Commission review of this issue by failing to object to the introduction of the videos at the hearing held before the Deputy Commissioner and (2) Defendants sufficiently authenticated the challenged exhibits. After careful consideration of Defendants' challenges to the Commission's order in light of the record and the applicable law, we conclude that the Plaintiff was not barred from challenging the admissibility of the videos before the Commission, that the Commission erred by refusing to consider the videos, and that this case should be remanded to the Commission for further proceedings, including the entry of an order that takes the information contained in these videos into account.

## I. Background

### A. Substantive Facts

At the time of the hearing held before the Deputy Commissioner in this case, Plaintiff was forty-one years old and had completed the tenth grade. In 2005, Plaintiff began working for Defendant Cox Toyota as a repair technician. On 28 August 2010, Defendant Cox Toyota moved into a new car sales and repair facility which was equipped with a video surveillance system.

On 8 September 2010, Plaintiff arrived for work at 7:30 a.m. Plaintiff claims that, shortly after noon, he was been walking near the area where he kept his toolbox when he tripped over an air hose and drop cord left on the floor by Frank Apple, the man assigned to work in the adjoining repair bay. After tripping over the hose, Plaintiff fell to the concrete floor. As he landed, Plaintiff felt "something pop." Upon attempting to rise, Plaintiff experienced a "stabbing pain" in his neck and lower back which radiated down his legs. A few minutes later, Plaintiff reported the accident to his immediate supervisor, Peggy Young, and told her that he had hurt his back when he tripped over a hose and fell to the floor.

Plaintiff continued to experience severe pain, and left work about forty-five minutes following his fall. Before leaving, Plaintiff showed his back to two co-workers, Daniel Carter and David Valencia, both of whom testified that Plaintiff claimed to have hurt his back after tripping over an air hose and both of whom observed that Plaintiff's back was red and swollen. According to Rusty Cox, Defendant Cox Toyota's vice-president, both Mr. Carter and Mr. Valencia were known to be honest individuals.

Plaintiff was initially seen by Physician Assistant Ronald Smith at Alamance Regional Medical Center, where he was admitted at 1:36 p.m. on 8 September 2010. While examining Plaintiff, P.A. Smith noticed decreased flexion in Plaintiff's lower back and observable muscle spasms in his left paraspinals. P.A. Smith testified that a muscle spasm could not be faked and that, in his opinion, Plaintiff had been injured earlier that day.

On 9 September 2010, Plaintiff saw Dr. Kevin L. Krasinski of Burlington Orthopaedic and Hand Surgery. According to Dr. Krasinski's notes, which include the same account of the origin of Plaintiff's injury that Plaintiff had given to his co-workers, Plaintiff had "traumatic lumbar disk herniation with contusion of the right hip." After ordering an MRI for the purpose of further assessing Plaintiff's back injury and reviewing the results of that study, Dr. Krasinski referred Plaintiff for pain management.

On 20 October 2010, Plaintiff began treating with Dr. Gregory H. Crisp, a board-certified pain management specialist. Dr. Crisp noted that Plaintiff had severe muscle spasms. According to Dr. Crisp, muscle spasms, which are involuntary, provide an objective indication of a patient's condition. Dr. Crisp referred Plaintiff for a surgical evaluation.

On 24 November 2011, Plaintiff was evaluated by Dr. James C. Califf, an expert in orthopedic medicine, who concluded that Plaintiff's pain was caused by an L4-L5 disc bulge and impingement. Based upon these findings and the fact that conservative care had proven ineffective, Dr. Califf recommended surgical intervention. On 2 December 2010, Plaintiff underwent a right L4-5 microdiskectomy and partial hemilaminotomy. After the surgical procedure, Plaintiff followed up with Dr. Califf on a regular basis. On 30 March 2011, Dr. Califf approved Plaintiff for sedentary duty.

According to Mr. Cox, the Cox Toyota video surveillance system had been in operation for a week as of 8 September 2010. During that time, Defendant Cox Toyota had not experienced any problems with

the system. After learning that Plaintiff claimed to have suffered a work-related injury by accident on 8 September 2010, Mr. Cox reviewed the surveillance video for that morning and transferred its contents to several DVDs. In addition, Defendants offered the testimony of an expert in digital forensics, Giovanni Masucci, who stated that there was no evidence that the recordings had been tampered with or altered. Defendants acknowledged, however, that there appeared to be a three second gap in the recording which might have coincided with the time at which Plaintiff claimed to have fallen.

### B.  Procedural History

On 15 September 2010, Defendants filed a Form 19 in which they reported Plaintiff's alleged injury to the Commission. On 20 September 2010, Plaintiff filed a Form 18 in which he reported his accident and made a claim for workers' compensation benefits. On 30 September 2010, Defendants filed a Form 61 in which they denied Plaintiff's claim on the grounds that Plaintiff had not suffered an injury by accident. On 27 October 2010, Plaintiff filed a Form 33 requesting that his claim be set for hearing.

A hearing was held before Deputy Commissioner Phillip A. Holmes on 25 February 2011. On 12 August 2011, Deputy Commissioner Holmes issued an order denying Plaintiff's claim for workers' compensation benefits. Although Deputy Commissioner Holmes acknowledged that Plaintiff had "testified that he suffered an injury by accident," he found that Plaintiff's "testimony can neither be accepted as credible or convincing" and also discounted the testimony of medical witnesses such as P.A. Smith, Dr. Crisp, and Dr. Krasinski on the grounds that the "medical providers gave expert medical opinions based on the facts as presented to them by" Plaintiff and "that the facts presented to medical providers by plaintiff were not credible." Deputy Commissioner Holmes reached the conclusion that Plaintiff was not credible on the grounds that the "video obtained by the security system at Cox Toyota Scion on September 8, 2010 does not corroborate plaintiff's account of events." Plaintiff noted an appeal from Deputy Commissioner Holmes' order to the Commission, which heard Plaintiff's case on 10 January 2012.

On 15 March 2012, the Commission entered an order in which it reversed Deputy Commissioner Holmes' decision and awarded medical and disability benefits to Plaintiff. In making this decision, the Commission determined that:

Plaintiff argued both in his Brief to the Full Commission, and at oral argument . . . that Deputy Commissioner Holmes erred by admitting defendants' Exhibit #1, a DVD . . . into evidence. Defendants responded to plaintiff's argument in both their Full Commission Brief and at oral argument[.] The Full Commission concludes that the proper foundation and authentication required to admit defendants' Exhibits #1, 2, and 3, [was] not properly laid and therefore it is ORDERED that defendants' Exhibits #1, 2, and 3, DVDs . . . are inadmissible and are removed from the record. . . . [and] that any and all testimony and evidence regarding the contents of defendants' Exhibits #1, 2, and 3 . . . is hereby stricken from the record.

Defendants noted an appeal to this Court from the Commission's order.

## II. Legal Analysis

### A. Standard of Review

"The standard of review in workers' compensation cases has been firmly established by the General Assembly and by numerous decisions of this Court. N.C. [Gen. Stat.] § 97-86 [(2011)]. Under the Workers' Compensation Act, '[t]he Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony.' Therefore, on appeal from an award of the Industrial Commission, review is limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law." *Richardson v. Maxim Healthcare/Allegis Grp.*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008) (quoting *Anderson v. Construction Co.*, 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965), and citing *Adams v. AVX Corp.*, 349 N.C. 676, 681-82, 509 S.E.2d 411, 414 (1998) (other citation omitted). "The Commission's conclusions of law are reviewed *de novo.*" *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004) (citing *Grantham v. R.G. Barry Corp.*, 127 N.C. App. 529, 534, 491 S.E.2d 678, 681 (1997), *disc. rev. denied*, 347 N.C. 671, 500 S.E.2d 86 (1998)).

### B. Waiver of Right to Object

[1] As an initial matter, Defendants argue that, because he did not object to the admission of Defendants' Exhibit Nos. 1, 2 and 3 at the

hearing conducted before Deputy Commissioner Holmes, Plaintiff "was therefore prevented from raising an authentication-based objection" before the Commission. In support of this contention, Defendants place principal reliance on N.C. R. App. P. 10 and various decisions applying the North Carolina Rules of Appellate Procedure in order to hold that a party who fails to obtain a ruling on an issue before the trial court may not raise that issue on appeal. As we understand their argument, Defendants are attempting to analogize proceedings held before the Commission on appeal from a deputy commissioner's order to appeal from the trial courts to the appellate division. We are not persuaded by Defendants' argument.[1]

N.C. R. App. P. 10(a)(1) provides, in pertinent part, that, in order "to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make[, and must have] . . . obtain[ed] a ruling upon the party's request, objection, or motion." In their brief, Defendants cite numerous cases holding that N.C. R. App. P. 10 requires a party to raise an issue before the trial tribunal as a prerequisite for obtaining appellate review of that issue. We do not, however, believe the North Carolina Rules of Appellate Procedure govern the Commission's review of an order entered by a deputy commissioner.

According to N.C. R. App. P. 1(b), the North Carolina Rules of Appellate Procedure "govern procedure in all appeals from the courts of the trial division to the courts of the appellate division; in appeals in civil and criminal cases from the Court of Appeals to the Supreme Court; [and] in direct appeals from administrative agencies, boards, and commissions to the appellate division[.]"

> As used in these rules, the term "trial tribunal" includes the superior courts, the district courts, and any administrative agencies, boards, or commissions from which appeals lie directly to the appellate division.

---

1. In his brief, Plaintiff contends that he "raised the issue of spoliation as a separate and distinct issue" and, for that reason, Defendants "were on notice before the matter went to hearing that Plaintiff was objecting to and questioning the authenticity and admissibility of the DVDs in question." We need not decide whether Plaintiff's decision to "raise[] the issue of spoliation" constituted an adequate objection to the admission of the videos into evidence before the Deputy Commissioner given our holding that such an objection is not, in the context of Commission proceedings, necessary to preserve such an evidentiary issue for review on appeal from an order entered by a deputy commissioner to the Commission.

N.C.R. App. P. 1(d). As a result, N.C. R. App. P. 1 clearly indicates that the North Carolina Rules of Appellate Procedure do not govern appeals from an order entered by a deputy commissioner to the Commission, which is not a part of the appellate division.

Not only does the language of the relevant provisions of the North Carolina Rules of Appellate Procedure justify rejection of Defendants' claim of procedural bar, but, in addition, the underlying basis for Defendants' argument has already been rejected by this Court. In *Joyner v. Rocky Mount Mills*, 92 N.C. App. 478, 374 S.E.2d 610 (1988), the plaintiff appealed from an order entered by a deputy commissioner to the Commission, which ruled that the plaintiff was not entitled to assert a claim for future medical expenses before the Commission "because the issue of future medical expenses was not 'properly preserved' under the Commission's rules." *Joyner*, 92 N.C. App at 470, 374 S.E.2d at 612. In addressing the validity of this determination, we stated that:

> When the matter was "appealed" to the full Commission by defend-ants it was the duty and responsibility of the full Commission to decide all of the matters in controversy between the parties. . . . [I]t is the duty of the Commission to consider every aspect of plaintiff's claim whether before a hearing officer or on appeal to the full Commission. The Commission may not use its own rules to deprive a plaintiff of the right to have his case fully determined. Thus, the Commission's statement . . . that "the issue of payment of future medical expenses is not properly preserved" will not support the order. We point out, although it hardly need be repeated, that the "full Commission" is not an appellate court in the sense that it reviews decisions of a trial court.

*Joyner* at 482, 374 S.E.2d at 613. As a result, " 'the full Commission has the duty and responsibility to decide all matters in controversy between the parties . . . even if those matters were not addressed by the deputy commissioner.' " *Perkins v. U.S. Airways*, 177 N.C. App. 205, 215, 628 S.E.2d 402, 408 (2006) (quoting *Payne v. Charlotte Heating & Air Conditioning*, 172 N.C. App. 496, 501, 616 S.E.2d 356, 360 (2005) (internal quotation marks omitted), *appeal dismissed*, 360 N.C. 483, 632 S.E.2d 489 (2006)), *disc. review denied*, 361 N.C. 356, 644 S.E.2d 231 (2007). Thus, the mere fact that a particular issue was not raised before a deputy commissioner does not, standing alone, obviate the necessity for the Commission to consider that issue.

As a general proposition, the appellate courts have looked to the contents of an appealing party's Form 44, rather than to the record before the Deputy Commissioner, in order to identify the issues that were properly before the full Commission. In *Payne*, the Deputy Commissioner sustained the defendants' objection to consideration of the plaintiff's claim for death benefits. The plaintiff specifically assigned as error "the Deputy Commissioner's decision" not to review the plaintiff's claim for death benefits "in her Form 44, 'Application for Review.'" *Payne*, 122 N.C. App. at 501, 616 S.E.2d at 360. In response to the defendants' argument that the death benefits issue was not properly before the Commission, we held that:

> [A] "plaintiff, having appealed to the full Commission pursuant to [N.C. Gen. Stat. §] 97-85 and having filed his Form 44 'Application for Review,' is entitled to have the full Commission respond to the questions directly raised by his appeal." Thus, once plaintiff included the issue of death benefits in her Form 44, defendants were on notice that the Full Commission would be required to address that issue.

*Payne* at 501, 616 S.E.2d at 360 (quoting *Vieregge v. N.C. State University*, 105 N.C. App. 633, 639, 414 S.E.2d 771, 774 (1992)). Likewise, in *Hurley v. Wal-Mart Stores, Inc.*, ___ N.C. App ___, 723 S.E.2d 794 (2012), the defendants, who had appealed from a deputy commissioner's order to the Commission, identified two issues in their Form 44. The Commission failed to decide the specific issues listed in the Form 44 and addressed other issues instead. On appeal, we stated that "the full commission addressed issues other than the award of attorney's fees, although this was the only issue raised by defendants' Form 44 Application for Review" and held that "[t]he full commission did not have authority to address these additional issues under the Workers' Compensation Rules of the North Carolina Industrial Commission." *Hurley*, ___ N.C. App at ___, 723 S.E.2d at 796. Similarly, in *Vieregge*, 105 N.C. App. at 639, 414 S.E.2d at 774-75, we held that the "plaintiff, having appealed to the full Commission pursuant to [N.C. Gen. Stat. §] 97-85 and having filed his Form 44 'Application for Review,' is entitled to have the full Commission respond to the questions directly raised by his appeal;" that the Commission "entered an order affirming the decision of the Deputy Commissioner as if it were an appellate court;" and that, "[a]s we have said previously, the North Carolina Industrial Commission is not an appellate court." (citing *Joyner*, 92 N.C. App. 478, 374 S.E.2d 610).

Thus, this Court has consistently utilized the issues outlined in the appealing party's Form 44 for the purpose of identifying the issues that the Commission was required to address on appeal from an order entered by a deputy commissioner.

Finally, this Court has specifically rejected a contention that an appellant must obtain a ruling from a deputy commissioner in order to properly raise an issue before the Commission. In *Clark v. ITT Grinnell Ind. Piping, Inc.*, 141 N.C. App. 417, 539 S.E.2d 369 (2000), *remanded on other grounds for reconsideration in light of Austin v. Continental Gen. Tire*, 354 N.C. 344, 553 S.E.2d 680 (2001), 354 N.C. 572, 558 S.E.2d 867 (2001), the defendants appealed to this Court from a Commission order. On appeal, the defendants argued that the Commission had utilized the wrong statute in the course of its analysis. In response, the plaintiff asserted that:

> [the Court] should not reach this issue because "it was not raised until after all the evidence had been submitted, the case had been decided by the Deputy Commissioner, and was on appeal before the Full Commission." However, it is the Commission's duty to consider every aspect of the claim whether before the hearing officer or on appeal to the Commission. . . . Accordingly, the fact that this issue was not raised until it was reviewed by the Commission is of no consequence to our appellate review of the case.

*Clark*, 141 N.C. App. at 426, 539 S.E.2d at 374 (citing *Joyner*, 92 N.C. App. at 482, 374 S.E.2d at 613). Thus, for all of these reasons,[2] we conclude that Plaintiff, who challenged the admissibility of Defendants' video evidence in his Form 44, was not procedurally barred from obtaining Commission review of this issue.[3]

---

2. The same logic causes us to reject Defendants' waiver-related arguments that, because Plaintiff utilized screen shots from the surveillance videos, did not object to additional testimony concerning the surveillance videos, and asked questions concerning the surveillance videos, Plaintiff was precluded from challenging the admissibility of the videos before the Commission.

3. Although it was not cited by either party, we note that, in *Maley v. Furniture Co.*, 214 N.C. 589, 200 S.E. 438 (1939), the Supreme Court held that "[t]he hearing before the full Commission is not entirely *de novo*;" that, in reviewing a decision made by a hearing commissioner, the Commission may "reconsider the evidence taken before the hearing Commissioner without hearing the witnesses again *viva voce* and give it such consideration as they may deem proper;" that "objection to [certain] evidence should have been made when it was first offered;" and that "a subsequent formal objection to the evidence filed before the full Commission, accompanied by a

**BOWMAN v. COX TOYOTA SCION**

[224 N.C. App. 1 (2012)]

## C. Admissibility of Video Evidence

**[2]** Secondly, Defendants argue that they "sufficiently authenticated the videos and therefore, the Full Commission erred in removing Defendants' Exhibits 1, 2 and 3." We believe that this aspect of Defendant's challenge to the trial court's order has merit.

"According to the Workers' Compensation Act, the 'processes, procedure, and discovery' used by the Industrial Commission in its hearings 'shall be as summary and simple as reasonably may be.' N.C. Gen. Stat. § 97-80(a) [(2011)]. 'Strictly speaking, the rules of evidence applicable in our general courts do not govern the Commission's own administrative fact-finding.' " *Brown v. Kroger Co.*, 169 N.C. App. 312, 320, 610 S.E.2d 447, 452 (2005) (quoting *Haponski v. Constructor's Inc.*, 87 N.C. App. 95, 97, 360 S.E.2d 109, 110 (1987)) (citations omitted), *appeal dismissed*, 359 N.C. 850, 619 S.E.2d 403 (2005). As a result, an appellate court should avoid utilizing an overly strict interpretation of the North Carolina Rules of Evidence in reviewing Commission decisions.

According to well-established North Carolina law, "[v]ideotapes are admissible . . . for both illustrative and substantive purposes." *State v. Gaither*, 161 N.C. App. 96, 102, 587 S.E.2d 505, 509 (2003), *disc. review denied*, 358 N.C.157, 593 S.E.2d 83 (2004)). "Any party may introduce a [video tape] . . . as substantive evidence upon laying a proper foundation and meeting other applicable evidentiary requirements." N.C. Gen. Stat. § 8-97. "The requirement of authentication represents a special aspect of the rule that evidence must be relevant . . . and 'is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.' [N.C. Gen. Stat. § 8C-1,] Rule 1002." *U.S. Leasing Corp. v. Everett, Creech, Hancock and Herzig*, 88 N.C. App. 418, 424, 363 S.E.2d 665, 668 (1988) (internal citation omitted), *disc. review denied*, 322 N.C. 329, 369 S.E.2d 364 (1988).

> The prerequisite that the offeror lay a proper foundation
> for the videotape can be met by: (1) testimony that the
> motion picture or videotape fairly and accurately illus-

---

motion to strike, comes too late." *Maley*, 214 N.C. at 593, 200 S.E.2d at 441. However, *Maley* appears to be fundamentally inconsistent with the modern view that the Workers' Compensation Act "places the ultimate fact-finding function with the Commission-not the hearing officer," *Adams*, 349 N.C. at 681, 509 S.E.2d at 413, and with the decisions from this Court discussed in the text, none of which have been challenged as inconsistent with *Maley*. As a result, we conclude that *Maley* is not controlling with respect to this issue.

trates the events filmed; (2) "proper testimony concerning the checking and operation of the video camera and the chain of evidence concerning the videotape[;"] (3) testimony that "the photographs introduced at trial were the same as those [the witness] had inspected immediately after processing;" or (4) "testimony that the videotape had not been edited, and that the picture fairly and accurately recorded the actual appearance of the area 'photographed[.]' "

*State v. Cannon*, 92 N.C. App. 246, 254, 374 S.E.2d 604, 608-09 (1988) (quoting *State v. Luster*, 306 N.C. 566, 569, 295 S.E. 2d 421, 423 (1982); *State v. Kistle*, 59 N.C. App. 724, 726, 297 S.E. 2d 626, 627 (1982), *disc. rev. denied*, 307 N.C. 471, 298 S.E. 2d 694 (1983); and *State v. Johnson*, 18 N.C. App. 606, 608, 197 S.E.2d 592, 594 (1973)) (other citation omitted), *rev'd on other grounds*, 326 N.C. 37, 387 S.E.2d 450 (1990). In *State v. Mason*, 144 N.C. App. 20, 26, 550 S.E.2d 10, 14 (2001), we stated that there are "three significant areas of inquiry for a court reviewing the foundation for admissibility of a videotape: (1) whether the camera and taping system in question were properly maintained and were properly operating when the tape was made, (2) whether the videotape accurately presents the events depicted, and (3) whether there is an unbroken chain of custody." *Mason*, 144 N.C. App. at 26, 550 S.E.2d at 15.

At the hearing held before Deputy Commissioner Holmes, Mr. Cox testified that, when his company moved into the new building on 28 August 2010, it "had a state of the art security system installed," including on-site surveillance video cameras which covered the area in which Plaintiff worked. Defendant Cox Toyota experienced no problems with the video surveillance system between the time that it occupied the building and the date of Plaintiff's alleged fall. The surveillance cameras were in operation on 8 September 2010, the date upon which Plaintiff claimed to have fallen. At the time that the video surveillance system was installed, Mr. Cox received instruction concerning the manner in which one should "obtain footage from the system." After learning of Plaintiff's claim, Mr. Cox used the instruction that he had received to "burn" a DVD of the footage depicting the service area during the relevant time period. Mr. Cox made copies of this DVD and testified that he did not alter the DVDs in any way after making them. The present record does not reveal the existence of any genuine dispute that the surveillance videos which Defendants sought to introduce were anything other than a recording of events

occurring in the service area at Defendant Cox Toyota on 8 September 2010. For that reason, we conclude that Defendants laid a sufficient foundation, which consisted of evidence concerning the operation of the video camera, the chain of custody of the DVDs that were made by Mr. Cox, and "testimony that the videotape had not been edited[] and that the picture fairly and accurately recorded the actual appearance of the area 'photographed,' " to support admission of the surveillance videos. *Cannon*, 92 N.C. App. at 254, 374 S.E.2d at 609. As a result, the Commission erred by refusing to consider the surveillance videos that Defendants sought to have admitted into evidence.

In urging us to affirm the Commission's ruling, Plaintiff points out that Defendants had failed to present any testimony to the effect that the surveillance videos accurately depicted the events which occurred in the service area at the time of Plaintiff's alleged injury. In addition, Plaintiff argues that Defendants submitted videos of over seven hours of surveillance and that, "[a]lthough there are no observable blue screens or freeze frames during the other 7-plus hours of recording, the DVD is missing at least 3 seconds of video during the critical time period"; that the original data contained in the surveillance system was "erased completely without any way to retrieve it;' " that Defendants "took absolutely no steps to insure that the DVD copy was a true and accurate copy of the data on the DVR;"[4] that "[n]ot a single witness . . . testified that the contents on the DVD are an exact match to the original contents on the DVR;"[5] and that no one viewed the original recording for the purpose of comparing it to the copies which Defendants sought to have admitted into evidence. Furthermore, Plaintiff asserts that:

---

4. The fact that the version of the surveillance videos introduced into evidence was a duplicate rather than the original is irrelevant to the admissibility determination given the absence of "a genuine question . . . as to the authenticity of the original" or "circumstances" making it "unfair to admit the duplicate instead of the original." N.C. Gen. Stat. § 8C-1, Rule 1003.

5. Aside from the arguments discussed in the text, Plaintiff asserts that Defendants offered "no testimony concerning the checking or operation of the video camera during the day in question." However, as we have already noted, Mr. Cox testified that Defendants had not experienced any problems with the video surveillance system between the date upon which Defendant Cox Toyota occupied the new building and the date upon which Plaintiff was allegedly injured. In addition, despite Plaintiff's contention that Defendants had failed to present any evidence tending to show that the DVD had not been edited and that it accurately represented the area in question, Mr. Cox clearly testified that he had not altered the DVD after recording it.

> Viewed in real-time, the DVD copy in question . . . shows Plaintiff walking toward his work station from the parts department at 12:05 p.m. on September 8, 2010. As he approaches his toolbox, the video freezes for 1.5 seconds. These frozen frames are subsequently followed by a blue screen which lasts for approximately 1.7 seconds. Even the Defendants' own expert admits that the "blue screen" lasts at least 1.5 seconds. After more than three full seconds of frozen frame and blue screen, the DVD returns to a live recording, at which time the Plaintiff is no longer on screen.

Finally, Plaintiff emphasizes that all of the medical evidence supports his claim; that Defendants did not have any evidence rebutting Plaintiff's testimony except for the fact that his fall is not depicted in the surveillance videos; and that Defendants relied "exclusively on the DVD in denying Plaintiff's claim" even though Plaintiff's expert witness testified "that there [were] over three seconds of critical time missing from the DVD." We do not find these arguments persuasive.

A careful analysis of Plaintiff's arguments in support of the Commission's evidentiary ruling reveals that each of them goes to the weight, rather than the admissibility, of the DVDs. In essence, each of Plaintiff's contentions rests on the assertion that, for various reasons, the surveillance videos have not been sufficiently validated to overcome "the substantial testimony of the Plaintiff, his co-workers, and his treating physicians." Although the Plaintiff's arguments might well justify a decision to find Plaintiff's testimony credible despite the inferences that Defendants seek to have the Commission draw from the surveillance videos, they do not suffice to justify a refusal on the part of the Commission to consider the videos at all. Similarly, we are unable, given the evident centrality of the videos to Defendants' attempt to establish that Plaintiff did not suffer a compensable injury by accident, to conclude that the Commission's erroneous failure to consider these videos in determining whether Plaintiff's claim had merit was harmless.

Although we do not wish to be understood as suggesting that the Commission should reject Plaintiff's challenges to the weight that should be given to the surveillance videos in the ultimate decision-making process, we do believe that the Commission, as the entity responsible for resolving any factual disputes that arise in connection with Plaintiff's claim for workers' compensation benefits, should have considered these videos in the course of addressing the factual

issues raised by Plaintiff's claim. As a result, for the reasons set forth above, we conclude that the Commission erred by excluding Defendants' Exhibits 1, 2, and 3 from the evidentiary record and that this case should be remanded to the Commission for further proceedings not inconsistent with this opinion, including the admission of the surveillance videos into the evidentiary record and the entry of an order that takes all of the evidence in the record, including the surveillance videos, into account.

REVERSED AND REMANDED.

Chief Judge MARTIN and Judge STEELMAN concur.