INMAN, Judge.
 

 *123
 
 Corey Donta Lee ("Defendant") appeals from a judgment following a jury verdict convicting him of assault with a deadly weapon with intent to kill inflicting serious injury. On appeal, Defendant argues that the trial court erred by instructing the jury that he could not receive the benefit of self-defense if he were the aggressor. After careful review, we hold that Defendant has failed to demonstrate error.
 

 Background and Procedural History
 

 This case arises from a shooting on the lawn of a Charlotte home on 15 March 2015. The State's evidence at trial tended to show the following:
 

 Defendant and Tierra Gray ("Gray") began dating in high school. Over the course of their eight-year relationship, Defendant and Gray had three children together. Defendant and Gray introduced Gray's mother, Angela Murray ("Murray"), to Floyd Long ("Long"), and the two began dating. Defendant, Gray, Murray, and Long were close friends for years.
 

 Several incidents before March 2015 deteriorated Defendant's relationship with Long.
 

 *235
 
 On one occasion, Defendant informed Gray that Long had bragged about Murray's sexual prowess. Gray relayed Defendant's comment to her mother, creating "bad blood" between Defendant and Long. On another occasion, Defendant and Murray argued over Defendant's treatment of Murray's son-in-law, and family members had to physically restrain Defendant from fighting Murray. Murray told Long about the encounter. On several occasions over the years, Defendant and Gray frequently fought and Defendant assaulted Gray. After fighting with Defendant, Gray commonly called her mother in tears, and Murray overheard her daughter's conversations with Defendant. Family members called the police several times to report Defendant's physical abuse. Defendant and Long's friendship ended when Long expressed his disapproval of how Defendant treated Gray, and Defendant was not receptive.
 

 By March of 2015, after eight years of dating, Defendant and Gray ended their relationship. Gray and her children moved into Murray's house in Charlotte.
 

 On the evening of 15 March 2015, Gray was out on a date with another man. Murray was at home. Just after midnight, Defendant drove to Murray's home in a rental car, hoping to see Gray. He did not exit his car but rather remained in the driveway, sending text messages to Gray on his phone. Approximately ten minutes after Defendant parked, Long arrived at Murray's house in a minivan and parked next to Defendant in
 
 *124
 
 the driveway. Long assumed that the rental car in the driveway belonged to Gray's new boyfriend.
 

 Long exited the minivan and approached Murray's front door. When Murray came to her door, she noticed Defendant sitting in the rental car outside and froze. Long approached Defendant's vehicle and asked him to step outside to "talk and get this handled[.]" Long then stepped into the middle of the yard to give Defendant space to exit his vehicle. Long testified that Defendant told him, "nah, I got something else for you," and started shooting. Defendant shot Long three times in rapid succession, with one bullet hitting his upper thigh, one bullet lodging half an inch under his heart, and one bullet piercing his abdomen.
 

 After the shooting, Defendant fled in his vehicle. Approximately one hour later, Defendant posted on Facebook, "just shot a bitch-ass nigga." Two days later, after learning a warrant had been issued for his arrest, Defendant surrendered himself to police.
 

 On 30 March 2015, Defendant was indicted on one count of attempted first degree murder. On 7 November 2016, Defendant was again indicted on a charge of attempted first degree murder, and also indicted on the additional charge of assault with a deadly weapon with intent to kill inflicting serious injury.
 

 The case came on for trial at the 23 January 2017 Session of the Mecklenburg County Superior Court, the Honorable Jesse B. Caldwell, III, presiding. Defense counsel argued that Defendant shot Long in self-defense.
 

 Defendant testified in his own defense and gave the following account, which conflicted with the State's evidence: after meeting Murray at her front door, Long angrily approached Defendant's car, stating "remember that shit with you and [Murray]? We're going to handle that shit real quick." Long then walked over to his van, opened the trunk, and began moving things around. Defendant believed Long was going to get a pistol. Long then walked back around to Defendant's car and aggressively told Defendant "don't reach for that gun." Defendant fired three shots at Long until Long was no longer approaching Defendant. Defendant acknowledged that he did not see Long with a pistol that night and had never seen Long with a gun.
 

 During the charge conference after the close of evidence and before counsel's arguments and the trial court's instructions to the jury, defense counsel objected to the inclusion of the aggressor doctrine in the pattern jury instruction for self-defense. Defense counsel argued that because
 
 *125
 
 Long had approached Defendant's vehicle before Defendant said anything to him, Long, rather than Defendant, initiated the fight. The prosecutor contended that because the State's evidence showed only that Long told Defendant to
 
 *236
 
 step out of his vehicle, it was a question for the jury to determine whether Defendant or Long was the aggressor. The trial court overruled Defendant's objection and instructed jurors, in pertinent part:
 

 Members of the jury, furthermore, self-defense is justified only if the defendant was not the aggressor. ... justification for defensive force is not present if the person who used defensive force voluntarily entered into the fight or, in other words, initially provoked the use of force against himself. If one uses abusive language towards one's opponent, which, considering all of the circumstances is calculated and intended to bring on a fight, then one enters a fight voluntarily. However, if the defendant was the aggressor, the defendant would be justifying in using defensive force if the defendant thereafter attempted to abandon the fight and gave notice to the defendant's opponent that the defendant was doing so.
 

 In other words, a person who uses defensive force is justified if the person withdraws in good faith from physical contact with the person who was provoked and indicates clearly that he desires to withdraw and terminate the use of force, but the person who was provoked continues or resumes the use of force.
 

 A person is also justified in using defensive force when the force used by the person who was provoked is so serious that the person using defensive force reasonably believes that he was in imminent danger of death or serious bodily harm, the person using defensive force had no reasonable means to retreat, and the use of force likely caused death or serious bodily harm was the only way to escape the danger.
 

 The jury found Defendant guilty of assault with a deadly weapon with intent to kill inflicting serious injury. Defendant was sentenced to fifty-three months to seventy-six months imprisonment. He appealed in open court.
 

 *126
 

 Analysis
 

 Defendant argues that the trial court erred by instructing the jury that he could not receive the benefit of self-defense if he were the aggressor. We disagree.
 

 A trial court's jury instructions challenged at trial are reviewed
 
 de novo
 
 on appeal.
 
 State v. Hope,
 

 223 N.C. App. 468
 
 , 471,
 
 737 S.E.2d 108
 
 , 111 (2012). Under
 
 de novo
 
 review, this Court considers the matter anew and is free to substitute its judgment for that of the trial court.
 
 State v. Williams
 
 ,
 
 362 N.C. 628
 
 , 632-33,
 
 669 S.E.2d 290
 
 , 294 (2008).
 

 A trial court's jury instructions should be "a correct statement of the law and ... supported by the evidence."
 
 State v. Conner
 
 ,
 
 345 N.C. 319
 
 , 328,
 
 480 S.E.2d 626
 
 , 629 (1997). "[A]n error in jury instructions is prejudicial and requires a new trial only if there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises."
 
 State v. Castaneda
 
 ,
 
 196 N.C. App. 109
 
 , 116,
 
 674 S.E.2d 707
 
 , 712 (2009) (internal quotation marks and citations omitted); N.C. Gen. Stat. § 15A-1443(a) (2015).
 
 [1]
 

 The aggressor doctrine provides that a defendant may not receive the benefit of self-defense if he was the aggressor.
 
 State v. Juarez
 
 ,
 
 369 N.C. 351
 
 , 358,
 
 794 S.E.2d 293
 
 , 300 (2016). An individual is the aggressor if he or she " 'aggressively and willingly enters into a fight without legal excuse or provocation.' "
 
 State v. Potter
 
 ,
 
 295 N.C. 126
 
 , 144,
 
 244 S.E.2d 397
 
 , 409 (1978) (quoting
 
 State v. Wynn
 
 ,
 
 278 N.C. 513
 
 , 519,
 
 180 S.E.2d 135
 
 , 139 (1971) ). Further, " '[a] person is entitled under the law of self-defense to harm another only if he is without fault in provoking, engaging in, or continuing a difficulty with another.' "
 

 *237
 

 State v. Effler
 
 ,
 
 207 N.C. App. 91
 
 , 98,
 
 698 S.E.2d 547
 
 , 552 (2010) (internal quotation marks and citations omitted). "[W]here the evidence does not indicate that the defendant was the aggressor, the trial court should not instruct on that element of self-defense."
 
 State v. Jenkins
 
 ,
 
 202 N.C. App. 291
 
 , 297,
 
 688 S.E.2d 101
 
 , 105 (2010).
 

 North Carolina law does not require that a defendant instigate a fight to be considered an aggressor. Rather, even if his opponent starts a
 
 *127
 
 fight, a defendant who provokes, engages in, or continues an argument which leads to serious injury or death may be found to be the aggressor.
 
 State v. Cannon
 
 ,
 
 341 N.C. 79
 
 , 82,
 
 459 S.E.2d 238
 
 , 241 (1995) (holding that a jury could find that the defendant was the aggressor where the defendant shot the unarmed victim, even though the victim initiated the fight and threatened to kill defendant);
 
 State v. Freeman
 
 ,
 
 275 N.C. 662
 
 , 669,
 
 170 S.E.2d 461
 
 , 466 (1969) (holding that while the victim started the altercation, the "defendant had become and remained the aggressor" when he pursued the fleeing victim);
 
 State v. Church
 
 ,
 
 229 N.C. 718
 
 , 722,
 
 51 S.E.2d 345
 
 , 348 (1949) (holding that while the victim started the fight, the defendant pursued it; thus, the defendant was the aggressor and not entitled to a self-defense instruction). "When there is conflicting evidence as to which party was the aggressor, the jury, as the finders of fact, are [sic] entitled to determine which of the parties, if either, is the aggressor."
 
 State v. Lee
 
 , --- N.C. App. ----, ----,
 
 789 S.E.2d 679
 
 , 688 (2016),
 
 review allowed
 
 ,
 
 369 N.C. 530
 
 ,
 
 796 S.E.2d 790
 
 (2017) (internal quotation marks and citation omitted).
 

 Critical to our analysis is the difference between the standard of review of a trial court's decision to instruct jurors on self-defense at all and the standard of review of the trial court's decision to include the aggressor instruction within the self-defense instruction. When reviewing a trial court's denial of a defendant's request for a self-defense instruction, the appellate court must consider the evidence in the light most favorable to the defendant
 
 . See
 

 State v. Webster
 
 ,
 
 324 N.C. 385
 
 , 391,
 
 378 S.E.2d 748
 
 , 752 (1989) ("In determining whether there was any evidence of self-defense presented, the evidence must be interpreted in the light most favorable to defendant." (citation omitted) ). By contrast, when reviewing a trial court's denial of a defendant's request to exclude the aggressor instruction from the jury instruction on self-defense, the appellate court does not consider the evidence in a light favorable to the defendant, as it is the province of the jury to resolve any conflict in the evidence in that regard.
 
 See, e.g.,
 

 State v. Terry
 
 ,
 
 329 N.C. 191
 
 , 199,
 
 404 S.E.2d 658
 
 , 662-63 (1991) (holding that "[a]lthough defendant's evidence does not support the aggressor instruction, the State's evidence supports it. By instructing jurors on the aggressor qualification, the trial court allowed the triers of fact to determine which testimony to believe[ ]");
 
 State v. Hoyle
 
 ,
 
 57 N.C. App. 288
 
 , 293-94,
 
 291 S.E.2d 273
 
 , 276 (1982) (holding that the trial court properly instructed the jury on the aggressor doctrine "based upon the above evidence by the State tending to show that defendant was the aggressor[ ]"). In
 
 State v. Joyner
 
 ,
 
 54 N.C. App. 129
 
 , 135,
 
 282 S.E.2d 520
 
 , 524 (1981), this Court held that when a defendant's evidence tended to show he acted in self-defense, "the trial
 
 *128
 
 judge was obligated to instruct on self-defense but because the State's evidence tended to show that defendant was the aggressor, he properly instructed further that self-defense would be an excuse only if defendant was not the aggressor."
 

 Here, the State's evidence tended to show that Defendant was the aggressor in his encounter with Long. Long testified that on the night of the shooting, he told Defendant to step out of his car so they could "talk" and "get it handled[;]" however, he did not threaten Defendant, touch Defendant's car, or approach Defendant. Long was unarmed. After speaking with Defendant, Long testified that he stepped into the yard to allow Defendant to exit his car, only to be shot by Defendant. Although Defendant's testimony materially differed from the State's evidence, the jury, as the finder of fact, was duty bound to weigh the credibility of the witnesses.
 
 Lee
 
 , --- N.C. App. at ----,
 
 789 S.E.2d at 688
 
 .
 

 The cases cited by Defendant are distinguishable, as none included any evidence
 
 *238
 
 from which a jury could find that the defendant was the aggressor.
 
 See, e.g.
 

 State v. Washington
 
 ,
 
 234 N.C. 531
 
 , 534,
 
 67 S.E.2d 498
 
 , 500 (1951) (holding the aggressor instruction was error when the deceased assaulted the defendant with his fist, knocking her down an embankment, struck her with a stick, and dragged her away from a crowd while stating his intention to take her out of sight and kill her);
 
 State v. Temples
 
 ,
 
 74 N.C. App. 106
 
 , 109,
 
 327 S.E.2d 266
 
 , 268 (1985) (holding that it was error for the trial court to instruct the jury on entering a fight voluntarily when "there is no evidence from which the jury could find that defendant voluntarily entered a fight with the deceased[ ]"). In contrast, here, there was conflicting evidence about the sequence of events leading to Defendant shooting Long, and the evidence was sufficient to support a jury finding that Defendant was the aggressor, therefore barring the defense of self-defense.
 

 Conclusion
 

 The record contained sufficient evidence to support a jury finding that Defendant was the aggressor in the altercation with Long. Therefore, the trial court did not err by instructing the jury on the aggressor doctrine.
 

 NO ERROR.
 

 Judges ELMORE and DIETZ concur.
 

 [1]
 

 Defendant contends that this alleged error violated his rights under the United States Constitution and, thus, the proper standard for assessing prejudice is the following: "A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless." N.C. Gen. § 15A-1443(b) (2015). Because we hold that the trial court did not err in instructing the jury on the aggressor doctrine, we need not address this contention.