MURPHY, Judge.
 

 *883
 

 *112
 
 A trial court must instruct a jury on self-defense where, taking the evidence in the light most favorable to the defendant as true, there is competent evidence to support such an instruction. Failure to do so
 
 *113
 
 is error, even if the State presents conflicting evidence. Additionally, a trial court does not err in instructing the jury on flight evidence where there is some evidence to reasonably support the theory that the defendant fled after commission of the crime charged. Here, there was evidence to support both a self-defense instruction and a flight instruction. The trial court committed prejudicial error by failing to instruct the jury on self-defense, thus entitling Defendant to a new trial.
 

 BACKGROUND
 

 On 2 April 2017, Aubrey Chapman ("Chapman") attended the birthday party of his cousin, Timothy Sims ("Sims"), at Red Bowl Asian Bistro in Raleigh. Also in attendance at the party was Chapman's childhood friend, Alan McGill ("McGill"). While McGill was ordering a drink from the restaurant's bar and talking to a female attendee, Defendant approached him. Defendant asked McGill, "How do you know her? Where do you know her from?" McGill responded that he did not want any trouble. At this time, Defendant hit McGill in the face with a closed fist. Chapman observed this sudden confrontation and struck Defendant in the face. Security escorted Defendant out of the restaurant. Chapman followed shortly thereafter, stating, "This guy is ruining this party for everybody." A group of people "stampeded out" of the restaurant behind Chapman.
 

 The sequence of events after Defendant, Chapman, and the group of attendees exited the restaurant conflicts. Chapman stated that when he exited the restaurant, Defendant immediately "came charging up" to him with an orange box cutter in his hand. As Defendant approached him with the box cutter, Chapman stated that he started "swinging" at Defendant. At this time, Chapman recalled the crowd grew and intervened. Chapman then stated that Defendant came charging at him again with the box cutter and cut him below his left kidney as Chapman tripped over a curb. Sims also recalled a male rushing towards Chapman outside of the restaurant. One of the security guards working the event also observed Defendant charge towards Chapman twice and cut Chapman on his back. Another security guard stated that [Chapman's] "friends had realized that [Defendant] had a box cutter, and [tried] to basically fight him and beat him up." Amidst the altercation between Defendant and the group, Reggie Penny ("Penny"), a security guard, was also cut "on his front half and his back."
 

 Penny, the injured security guard, and Sherrel Outlaw ("Outlaw"), an attendee, however, recalled a different sequence of events outside of the restaurant. Penny stated that he observed Defendant trying to
 
 *114
 
 reenter the restaurant after being escorted out. As he was speaking with Defendant, Penny recalled "two people rushing up to [Defendant]" on both sides to start an altercation with Defendant. Amidst the altercation, Penny observed the group "kicking and stomping." Outlaw stated that she went outside after hearing "commotion" inside the restaurant. She then saw Defendant with "his hands up" when "a group of guys [started] walking towards him ...." At this time, Defendant "took a couple of steps back and then there was a guy on the left side of him that hit him in the face, and then there was a guy like probably two steps to the right of [Defendant], and once he got hit, the guy on the right side swung." Outlaw stated, "that is when the group of guys started jumping on him and I seen [sic] them go down." Outlaw stated that she did not see Defendant with a weapon.
 
 *884
 
 Defendant was indicted on two counts of Assault with a Deadly Weapon Inflicting Serious Injury. At trial, Defendant requested a jury instruction on self-defense using N.C.P.I. - Crim. 308.45. The trial court denied this request, stating, "I don't believe that there is evidence that has been presented that supports a self defense claim." The trial court also overruled Defendant's objection to instructing the jury on flight. A jury convicted Defendant for Assault with a Deadly Weapon for the injuries sustained by Penny and Assault with a Deadly Weapon Inflicting Serious Injury for those sustained by Chapman. Defendant was sentenced to an active term of 29 to 47 months.
 

 ANALYSIS
 

 A. Standard of Review
 

 We review a challenge to the trial court's decision regarding jury instructions de novo.
 
 State v. Osorio,
 

 196 N.C. App. 458
 
 , 466,
 
 675 S.E.2d 144
 
 , 149 (2009). "Under a
 
 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal."
 
 State v. Williams
 
 ,
 
 362 N.C. 628
 
 , 632-33,
 
 669 S.E.2d 290
 
 , 294 (2008) (citation and internal quotation marks omitted). Defendant preserved his arguments regarding jury instructions for appeal. Accordingly, he must demonstrate that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C.G.S. § 15A-1443(a) (2017).
 

 B. Self-Defense Instruction
 

 Defendant first contends the trial court erred in failing to instruct the jury on the use of deadly force in self-defense. We agree.
 

 *115
 
 "It is the duty of the trial court to instruct the jury on all substantial features of a case raised by the evidence."
 
 State v. Shaw
 
 ,
 
 322 N.C. 797
 
 , 803,
 
 370 S.E.2d 546
 
 , 549 (1988). "When supported by competent evidence, self-defense unquestionably becomes a substantial and essential feature of a criminal case ...."
 
 State v. Deck
 
 ,
 
 285 N.C. 209
 
 , 215,
 
 203 S.E.2d 830
 
 , 834 (1974). For this reason, a defendant is entitled to an instruction on self-defense when he or she presents competent evidence of such.
 
 State v. Morgan
 
 ,
 
 315 N.C. 626
 
 , 643,
 
 340 S.E.2d 84
 
 , 95 (1986). In determining whether a defendant has presented competent evidence sufficient to support an instruction for self-defense, we take the defendant's evidence as true and consider it in the light most favorable to the defendant.
 
 State v. Moore
 
 ,
 
 363 N.C. 793
 
 , 796,
 
 688 S.E.2d 447
 
 , 449 (2010). Once this showing of competent evidence is made, "the court must charge on this aspect even though there is contradictory evidence by the State or discrepancies in defendant's evidence."
 
 State v. Anderson
 
 ,
 
 40 N.C. App. 318
 
 , 321,
 
 253 S.E.2d 48
 
 , 50 (1979) (quoting
 
 State v. Dooley
 
 ,
 
 285 N.C. 158
 
 , 163,
 
 203 S.E.2d 815
 
 , 818 (1974) ).
 

 N.C.G.S. § 14-51.3 provides:
 

 (a) A person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that the conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful force. However, a person is justified in the use of deadly force and does not have a duty to retreat in any place he or she has the lawful right to be if either of the following applies:
 

 (1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another.
 

 (2) Under the circumstances permitted pursuant to G.S. 14-51.2
 

 N.C.G.S. § 14-51.3(a) (2017). However, subject to certain exceptions, our law does not permit a defendant to receive "the benefit of self-defense if he was the aggressor" or initially provokes the use of force against himself or herself.
 
 State v. Lee
 
 , --- N.C. App. ----, ----,
 
 811 S.E.2d 233
 
 , 236 (2018) ; N.C.G.S. § 14-51.4(2) (2017). "An individual
 
 *885
 
 is the aggressor if he or she aggressively and willingly enters into a fight without legal excuse or provocation."
 
 Lee
 
 , --- N.C. App. at ----,
 
 811 S.E.2d at 236
 
 . Moreover, the limited circumstances under which an initial aggressor may regain his or her right to use defensive force under
 
 *116
 
 N.C.G.S. § 14-51.4 are unavailable to a defendant who used deadly force in his or her initial aggression.
 
 State v. Holloman
 
 ,
 
 369 N.C. 615
 
 , 628-29,
 
 799 S.E.2d 824
 
 , 833 (2017).
 

 Here, Defendant does not dispute the trial court's finding that the box cutter is a deadly weapon as a matter of law. Thus, we analyze the use of the box cutter in self-defense as the use of deadly force. Accordingly, our inquiry is into whether Defendant presented competent evidence that he "reasonably believe[d] that such force [was] necessary to prevent imminent death or great bodily harm to himself" so as to warrant an instruction on self-defense.
 
 [1]
 
 N.C.G.S. § 14-51.3(a)(1).
 

 At trial, Defendant's counsel asked Penny, "As you were talking to [Defendant], the man who was hosting the party and his buddy came up and rushed around you and attacked [Defendant]?" Penny replied, "Yes." More explicitly, Penny testified that "[t]hey attacked him." Penny further stated that he did not see any weapon in Defendant's hand at that time. Outlaw, another attendee of the party, similarly testified that she did not see a weapon in Defendant's hand and that she observed the group of people attack Defendant while he was backing up with his hands raised. When the group attacked Defendant, Outlaw described it as a "riot," with multiple people hitting and kicking Defendant. Outlaw even testified that she believed Defendant would die in the attack "because there was [sic] so many of them." Taken as true and in the light most favorable to Defendant, this evidence is sufficient to support Defendant's proposition that the assault on him gave rise to his reasonable apprehension of death or great bodily harm.
 
 See
 

 State v. Whetstone
 
 ,
 
 212 N.C. App. 551
 
 , 560,
 
 711 S.E.2d 778
 
 , 784-85 (2011) (finding sufficient evidence to support the proposition that an assault on the defendant gave rise to his reasonable apprehension of death or great bodily harm when the defendant was knocked to the ground, held there, and choked). As such, the trial court erred in failing to instruct the jury on the use of self-defense.
 

 The State contends that there is no evidence from which self-defense may be inferred, arguing that all of the evidence indicates that Defendant was the initial aggressor, thus depriving him of a self-defense instruction. The State is correct in its recitation of some of the evidence presented showing that Defendant
 
 was
 
 the initial aggressor of the altercation outside of the restaurant when he twice charged at Chapman with a box cutter; however, the State omits the conflicting evidence
 
 *117
 
 from Penny and Outlaw indicating that Defendant had not brandished a weapon and was attacked without provocation when attendees flanked and attacked him on both sides. The credibility of such evidence does not factor into our analysis, as we must view the evidence in the light most favorable to Defendant and take such evidence as true. We have "held that when a defendant's evidence tended to show he acted in self-defense, 'the trial judge was obligated to instruct on self-defense but because the State's evidence tended to show that defendant was the aggressor, he properly instructed further that self-defense would be an excuse only if defendant was not the aggressor.' "
 
 Lee
 
 , --- N.C. App. at ----,
 
 811 S.E.2d at 237
 
 (quoting
 
 State v. Joyner
 
 ,
 
 54 N.C. App. 129
 
 , 135,
 
 282 S.E.2d 520
 
 , 524 (1981) ). With conflicting evidence, it was for the jury to determine which individual was the initial aggressor.
 

 Having concluded the trial court erred in failing to instruct the jury on self-defense, we must next determine whether
 
 *886
 
 Defendant has met his burden of showing a reasonable possibility that, had this error not been committed, a different result would have been reached. The State contends that no such reasonable possibility exists, as "Defendant only put on one witness, Ms. Outlaw" and "[h]er testimony was not credible." However, the determination of the credibility of witness testimony rests firmly with the jury. The trial court's erroneous denial of Defendant's request for a self-defense instruction prevented the jury from considering whether Defendant reasonably believed that deadly force was necessary to prevent imminent death or great bodily harm to himself.
 
 See
 

 State v. Ramos
 
 ,
 
 363 N.C. 352
 
 , 356,
 
 678 S.E.2d 224
 
 , 227 (2009) ("Evaluating the credibility of defendant's testimony in light of the other evidence was properly for the jury and the trial court's instructional error prevented the jury from considering the willfulness of defendant's actions.") Based on the testimony of Penny and Outlaw, the trial court's error was prejudicial, as there is a reasonable possibility that the jury could have found that Defendant reasonably believed deadly force to be necessary.
 

 C. Flight Instruction
 

 Defendant also contends that the trial court erred in instructing the jury that it could consider Defendant's alleged flight as evidence of guilt. We disagree.
 

 "A trial court may properly instruct on flight where there is some evidence in the record reasonably supporting the theory that the defendant fled after the commission of the crime charged."
 
 State v. Lloyd
 
 ,
 
 354 N.C. 76
 
 , 119,
 
 552 S.E.2d 596
 
 , 625 (2001) (citation and internal quotation marks omitted). "Mere evidence that defendant left the scene of
 
 *118
 
 the crime is not enough to support an instruction on flight. There must also be some evidence that defendant took steps to avoid apprehension."
 
 State v. Thompson
 
 ,
 
 328 N.C. 477
 
 , 490,
 
 402 S.E.2d 386
 
 , 392 (1991). However, "[t]he fact that there may be other reasonable explanations for defendant's conduct does not render the instruction improper."
 
 State v. Irick
 
 ,
 
 291 N.C. 480
 
 , 494,
 
 231 S.E.2d 833
 
 , 842 (1977).
 

 The probative value of flight evidence has been "consistently doubted" in our legal system, and we note at the outset that we similarly doubt the probative value of Defendant's alleged flight here.
 
 See
 

 Wong Sun v. U.S.
 
 ,
 
 371 U.S. 471
 
 , 483 n. 10,
 
 83 S.Ct. 407
 
 , 415 n. 10,
 
 9 L.Ed.2d 441
 
 (1963). However, there is "some evidence in the record" that "reasonably support[s] the theory that the defendant fled after the commission of the crime charged."
 
 See
 

 Lloyd
 
 ,
 
 354 N.C. at 119
 
 ,
 
 552 S.E.2d at 625
 
 . Sims reported to a responding officer that after Penny was injured, Defendant "took off running[,]" and "the other bouncers chased after [Defendant] and tackled him to the ground." Moreover, Officer Michael Curci testified that Defendant "had run in this direction so [the] victims were to my left and the suspect was to my right." Such evidence reasonably supports the theory that Defendant not only left the scene of the altercation, but also took steps to avoid apprehension. The trial court did not err in instructing the jury on flight.
 

 CONCLUSION
 

 Although the evidence of self-defense presented at trial was conflicting, taking the evidence in the light most favorable to Defendant as true, there was competent evidence sufficient to support a self-defense instruction. This error was prejudicial. The trial court, however, did not err in instructing the jury on flight. Defendant is entitled to a new trial.
 

 NEW TRIAL.
 

 Judges STROUD and DIETZ concur.
 

 [1]
 

 N.C.G.S. § 14-51.3(a)(2) is inapplicable, as the circumstances permitted under N.C.G.S. § 14-51.2 are inapplicable to this case.