IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-219

Filed 18 February 2026

McDowell County, No. 22CR050009-580

STATE OF NORTH CAROLINA

v.

EMILLIO JESUS VILLARREAL

Appeal by Defendant from judgment entered 9 April 2024 by Judge Reggie E. McKnight in McDowell County Superior Court. Heard in the Court of Appeals 29 January 2026.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Heidi M. Williams, for the State-Appellee.*

*The Sweet Law Firm, PLLC, by Kaelyn N. Sweet, for Defendant-Appellant.*

COLLINS, Judge.

Defendant, Emillio Jesus Villarreal, appeals from a judgment entered upon a jury's guilty verdict of second-degree murder. Defendant argues that the trial court erred by instructing the jury on the aggressor doctrine. For the following reasons, we find no error.

## I. Background and Procedural History

Defendant shot and killed Ethan Troutman at Defendant's residence in Marion, North Carolina, on 3 January 2022. Multiple eyewitnesses were present at

the shooting. At trial, eyewitnesses called by the State and Defendant offered conflicting accounts of the events surrounding the shooting. The evidence, considered in the light most favorable to the State as the party requesting the instruction, *see State v. Hicks*, 385 N.C. 52, 61 (2023), tended to show the following:

Troutman and Bobby Landon Thomas were eating together at a restaurant in Morganton on 3 January 2022 when Troutman received a call from Dante Davidson. Davidson was at Defendant's residence in Marion with Defendant, Cierra Porter and her two young children, Angela Elliott, Taylor Garland, and Mekhi Hart.

Davidson requested Troutman's Netflix password; Troutman declined to give it to him because Davidson owed Troutman money. Aggression escalated between Troutman and Davidson over a series of subsequent phone calls, which were placed on speakerphone. Defendant eventually told Troutman to come to his residence to get the money and gave him the address.

Troutman and Thomas drove to Defendant's residence in Thomas' car. They stopped to pick up another friend, Bradley Metcalf, on the way. Troutman, Thomas, and Metcalf arrived at Defendant's residence at approximately 7:39 p.m. on 3 January 2022. Thomas parked on the street; Troutman exited the car and stepped onto the sidewalk in front of the residence.

Davidson came out of Defendant's residence and met Troutman. At first, their conversation was civil. Davidson told Troutman that he did not have the money he owed; Troutman then asked Davidson to give him the chain Davidson was wearing.

Troutman reached for the chain, and Davidson pushed his hand away.

Troutman pulled out a metal, retractable baton. Davidson backed into the front yard and twice yelled, "He has a weapon." Within seconds, Defendant stepped onto the front porch with a gun and Troutman turned to run. Defendant fired one shot at Troutman, hitting him in the back.

After being shot, Troutman got back in Thomas' vehicle, and Thomas began to drive away. Neither Thomas nor Metcalf immediately realized that Troutman had been shot. When they did, Thomas stopped the car and attempted to perform first response procedures on Troutman while Metcalf called 911. Troutman ultimately died from his wound.

After the shooting, Davidson ran to his truck and drove away from Defendant's residence. The people remaining in the residence attempted to cover up what happened by telling the police that Troutman had entered the residence. Defendant, Davidson, Hart, and Porter all admitted to lying to the police by telling them that Troutman had entered Defendant's residence when they were first questioned.

At the close of evidence, the court conducted its charge conference. Over Defendant's objection, the court agreed to give a jury instruction on the aggressor doctrine. The jury convicted Defendant of second-degree murder. The court sentenced Defendant to 254 to 317 months' imprisonment.

Defendant appealed in open court.

## II.    Discussion

Defendant argues that the trial court erred by instructing the jury on the aggressor doctrine because the evidence presented did not allow any inference that Defendant was the aggressor.

"A trial court's jury instructions challenged at trial are reviewed *de novo* on appeal." *State v. Lee*, 258 N.C. App. 122, 126 (2018). "Under *de novo* review, this Court considers the matter anew and is free to substitute its judgment for that of the trial court." *Id.*

"When deciding whether to include the aggressor doctrine in jury instructions, the relevant issue is simply whether the record contains evidence from which the jury could infer that the defendant was acting as an 'aggressor' at the time that he or she allegedly acted in self-defense." *Hicks*, 385 N.C. at 60-61 (citation omitted). "While all evidence is to be considered, the evidence must be considered in the light most favorable to the State." *Id.* at 61 (citation omitted). The State must be given the benefit of every reasonable inference to be drawn from the evidence and any contradictions in the evidence are to be resolved in favor of the State." *Id.* (citation omitted).

Pursuant to N.C. Gen. Stat. § 14-51.3, "'a person is justified in the use of deadly force and does not have a duty to retreat' if he or she is in a lawful place and 'reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another' or 'under the circumstances permitted

pursuant to [N.C. Gen. Stat.] § 14-51.2.'" *Hicks*, 385 N.C. at 59 (brackets omitted) (quoting N.C. Gen. Stat. § 14-51.3(a)). Under section 14-51.2, there is a presumption that a home's "lawful occupant . . . held a reasonable fear of imminent death or serious bodily harm to himself or herself or another" when using deadly force if the victim "was in the process of unlawfully and forcefully entering, or had unlawfully and forcibly entered, a home" which the lawful occupant "knew or had reason to believe . . . was occurring or had occurred." N.C. Gen. Stat. § 14-51.2(b) (2024).

However, the defenses pursuant to N.C. Gen. Stat. §§ 14-51.3 and 14-51.2 "'are not available to' someone who 'initially provokes the use of force against himself or herself.'" *Hicks,* 385 N.C. at 60 (brackets omitted) (quoting N.C. Gen. Stat. § 14-51.4). "This is what is commonly known as the 'aggressor doctrine.'" *Id.* "Someone may be considered the aggressor if they aggressively and willingly enter into a fight without legal excuse or provocation." *Id.* (cleaned up). "North Carolina law does not require that a defendant instigate a fight to be considered an aggressor." *Lee*, 258 N.C. App. at 126. Rather, "someone who did not instigate a fight may still be the aggressor if they continue to pursue a fight that the other person is trying to leave." *Hicks*, 385 N.C. at 60. Relevant here, a victim being shot in the back may support an inference that the victim was trying to leave a fight. *See State v. Cannon*, 341 N.C. 79, 83 (1995).

The record in this case contains evidence from which the jury could infer that Defendant was acting as the aggressor when he invited Troutman to his residence

and shot him in the back. Porter, Hart, and Davidson all testified that Defendant told Troutman to come to Defendant's residence and gave him the address. Porter, Hart, and Davidson all testified that Troutman never raised or swung his baton at Davidson. And it is uncontested that Defendant shot Troutman in the back. Although various witnesses offered materially differing testimony, "the jury, as the finder of fact, was duty bound to weigh the credibility of the witnesses." *Lee*, 258 N.C. App. at 128. Cumulatively, this evidence is sufficient to support a jury's inference that Defendant acted as the aggressor, and thus, it supports an aggressor doctrine jury instruction.

## III.   Conclusion

The record contained sufficient evidence to support a jury finding that Defendant acted as the aggressor  Accordingly, the trial court did not err by instructing the jury on the aggressor doctrine.

NO ERROR.

Judges FLOOD and MURRY concur.