IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-9

Filed 18 March 2026

Brunswick County, No. 23CR412129-090

STATE OF NORTH CAROLINA

v.

JOHN RUBEN BUTLER, JR.

Appeal by Defendant from Judgment entered 30 May 2024 by Judge Jason C. Disbrow in Brunswick County Superior Court. Heard in the Court of Appeals 12 August 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Jayla L. Cole, for the State.*

*Joseph M. Jennings for Defendant-Appellant.*

HAMPSON, Judge.

**Factual and Procedural Background**

John Ruben Butler, Jr., (Defendant) appeals from his conviction for Assault Inflicting Serious Bodily Injury. The Record on Appeal tends to show the following:

On 14 September 2023, Defendant was drinking at the home of Laura Fasnacht with Laura, Timothy Williamson, and Defendant's girlfriend, Nicole Fairfax. Defendant and Nicole began arguing, leading to Defendant striking and damaging a window of Nicole's vehicle.

Nicole got into Defendant's truck and tried to drive away, but Laura stood in front of the truck and forced Nicole to stop. Tim walked over to the truck, unlocked the driver's side door, and pulled Nicole out of the driver's seat and onto the ground. He put Nicole into a choke hold and held her in place.

Defendant approached Tim and struck him repeatedly in the face and on the head, causing him to let go of Nicole. Tim partially lost consciousness following the first hit and faded in and out of consciousness throughout the rest of the encounter. Defendant continued to strike Tim around the head and face while Tim laid on the ground. Tim told Defendant, "please stop." Defendant, however, continued to hit him. Nicole and Laura attempted to separate Defendant from Tim but were unsuccessful.

Nicole got back into the driver's seat of Defendant's truck, Defendant got into the passenger seat, and Nicole drove away. As they left, Nicole drove over Tim's right leg. Nicole and Defendant drove to a field about ten minutes away, where they slept until law enforcement found and arrested them the next morning.

Tim was taken to the hospital the night of the assault and treated for his injuries, including a closed fracture of his right orbit, a closed right maxillary fracture, and a left parietal scalp hematoma. He was released the next day, prescribed pain medication, and recommended for outpatient follow-up.

Defendant was charged with one count of Assault Inflicting Serious Bodily Injury. His case came on for jury trial on 28 May 2024.

Prior to trial, Defendant moved to exclude photographs of Tim's leg or reference

to his leg injuries in medical records as irrelevant and unfairly prejudicial because Defendant was not driving the truck when it drove over Tim's leg. Nicole, who drove the truck over Tim's leg, had previously pleaded guilty to assault with a deadly weapon. The trial court allowed the motion on the basis that this evidence was irrelevant or, alternatively, unfairly prejudicial. At trial, certain evidence was admitted which Defendant identifies on appeal as relating to the fact that Tim's leg had been run over, including witness testimony, medical records, and photographs. The photographs referenced in the pretrial motion were not introduced, and the medical records were redacted to remove direct references to the leg injuries. Defendant did not object to this evidence at trial.

The State also introduced as evidence copies of video clips taken by the Ring camera installed outside Laura's home. Laura testified the camera was functioning properly that night and that she had provided all the video to Detective Brandon Fuller, who investigated the incident. Detective Fuller testified he used his phone camera to record all the videos Laura provided him. Defendant moved pretrial to exclude these videos for insufficient authentication, and he renewed this objection when the videos were introduced as evidence before the jury. The trial court admitted the videos over Defendant's authentication objection.

Following the State's presentation of evidence, Defendant moved to dismiss for insufficiency of evidence. The trial court denied that Motion.

The trial court instructed the jury, over Defendant's objection, that it could

consider flight from the scene as evidence of guilt. It also denied Defendant's request that the jury be instructed on defense of a motor vehicle.

The jury found Defendant guilty of Assault Inflicting Serious Bodily Injury and the trial court sentenced Defendant to 20 to 33 months imprisonment. Defendant filed timely written notice of appeal.

## Issues

The issues on appeal are whether the trial court erred by: (I) denying Defendant's Motion to Dismiss the charge of Assault Inflicting Serious Bodily Injury on the basis there was insufficient evidence to support a finding Tim suffered "serious bodily injury"; (II) admitting evidence relating to Nicole driving over Tim's leg and the resulting injuries; (III) admitting footage from the Ring camera over Defendant's foundation objection; (IV) instructing the jury on flight; and (V) refusing to instruct the jury on Defense of a Motor Vehicle.

## Analysis

I.  Serious Bodily Injury

Defendant argues the trial court erred in denying his Motion to Dismiss. Specifically, Defendant contends there was insufficient evidence to support a finding that Tim suffered serious bodily injury.

When a defendant moves to dismiss a criminal charge for insufficiency of evidence, the court must determine "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and

(2) of defendant's being the perpetrator of such offense." *State v. Fritsch,* 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). We review the trial court's denial of a motion to dismiss *de novo. State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). We consider the evidence "in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994).

Defendant was convicted of Assault Inflicting Serious Bodily Injury under N.C. Gen. Stat. § 14-32.4(a) (2025), which states: "Unless the conduct is covered under some other provision of law providing greater punishment, any person who assaults another person and inflicts serious bodily injury is guilty of a Class F felony." The offense thus "requires proof of two elements: (1) the commission of an assault on another, which (2) inflicts serious bodily injury." *State v. Hannah*, 149 N.C. App. 713, 717, 563 S.E.2d 1, 4 (2002). The statute further defines the types of harm that constitute "serious bodily injury:"

> "Serious bodily injury" is defined as bodily injury that creates a substantial risk of death, or that causes serious permanent disfigurement, coma, a permanent or protracted condition that causes extreme pain, or permanent or protracted loss or impairment of the function of any bodily member or organ, or that results in prolonged hospitalization.

N.C. Gen. Stat. § 14-32.4(a). Accordingly, a showing of serious bodily injury "requires proof of more severe injury than the 'serious injury' element of other assault offenses." *State v. Williams,* 150 N.C. App. 497, 503, 563 S.E.2d 616, 619-20 (2002). The General Assembly created this category of assault "to cover those assaults that are especially violent and result in the infliction of extremely serious injuries[.]" *Id.*

In this case, the trial court's jury instructions specifically limited the jury's consideration of serious bodily injury:

> Serious bodily injury is injury that creates or causes a substantial risk of death, a permanent or protracted condition that causes extreme pain, permanent or protracted loss or impairment of the function of any bodily member or organ, and/or prolonged hospitalization.

As the trial court limited its instruction and "a defendant may not be convicted of an offense on a theory of guilt different from that presented to the jury," we limit our analysis to the definition actually submitted to the jury. *Williams*, 150 N.C. App. at 503, 563 S.E.2d at 620.

The State argues Tim's injuries are sufficient to support a finding of serious bodily injury, citing our unpublished decision in *State v. Barefoot,* 268 N.C. App. 671, 835 S.E.2d 62 (2019 WL 6482886).[1] In *Barefoot,* we found sufficient evidence of serious bodily injury when the victim suffered facial injuries that resulted in permanent disfigurement and required a plate to be surgically implanted over his

---

[1] Unpublished opinions are not controlling on this Court and citation by practitioners is disfavored. N.C. R. App. P. 30(e)(3) (2025).

fractures. *Id.* at *5. The victim experienced severe pain following the assault, fainting twice the day after, and "experienced pain and numbness in his face and left eye up to the time of trial." *Id.* The treating physician estimated this numbness could take three years to heal. *Id.* The victim also suffered from a protracted impairment of the function of his jaw, which prevented him from eating for three months after surgery and kept him out of work for five months. *Id.* Thus, the evidence in *Barefoot* supported findings both that the victim was permanently disfigured and that he suffered severe pain for a protracted length of time, satisfying the statutory definition of serious bodily injury.

In addition to being unpublished and therefore uncontrolling, *Barefoot* is inapposite. Unlike in *Barefoot,* the evidence in this case does not demonstrate that there was either a prolonged hospitalization, a substantial risk of death, loss or impairment of the function of any bodily member or organ, or that Tim suffered from a "permanent or protracted condition" that caused extreme pain. The evidence reflected Tim's injuries consisted primarily of facial fractures, described specifically as a closed fracture of his right orbit, a closed right maxillary fracture, and a left parietal scalp hematoma. He was taken to the hospital the night of the assault, treated, and released the next day. He was prescribed painkillers but never filled the prescription, and he testified the pain was gone after "a day or two" with bruises lasting up to a week. He testified there was no lasting effect from his injuries. As the only precedent invoked by the State, it is clear the injuries at issue in *Barefoot* were

significantly more severe than in this case, in which Tim experienced no long-term effect following a "day or two" of pain and a week of bruising.

Indeed, other examples of "serious bodily injury" from our caselaw universally involve a more prolonged recovery period and profound effect on the victim. *See, e.g., State v. Fields,* 265 N.C. App. 69, 72, 827 S.E.2d 120, 122 (2019) (rip in genitals causing pain for three months, requiring 15 stitches, pain medication, and that victim stay out of work for two weeks); *State v. Brown,* 177 N.C. App. 177, 188, 628 S.E.2d 787, 794 (2006) (victim testified facial injuries were "very painful," that he suffered pain for about a month; doctor testified injuries were of a type that caused "severe" and "extreme" pain). We have also held injuries requiring a significantly longer recovery than those in this case as failing to constitute severe bodily injury. *See State v. Williams¸* 201 N.C. App. 161, 184, 689 S.E.2d 412, 425 (2009) (evidence of "vicious beating" that left victim's ribs sore for five months insufficient to show serious bodily injury as there was no evidence of substantial risk of death or extreme pain).

While previous cases which turn on particular facts can be instructive, we note the specific injuries in precedent cases should not be used as "measuring posts" for determining whether the evidence before us is sufficient to support a finding of serious bodily injury. *State v. Rushing,* 268 N.C. App. 285, 291, 838 S.E.2d 262, 266 (2019). Our inquiry focuses not on whether the victim's injuries were more or less severe than those suffered in another case, but on whether there is substantial evidence the injuries satisfy the statutory definition of serious bodily injury, as

relayed to the jury. *Id.* The question is whether a reasonable juror could find the evidence in the Record, taken in the light most favorable to the State, sufficient to conclude Tim's injuries caused a "substantial risk of death, a permanent or protracted condition that causes extreme pain, permanent or protracted loss or impairment of the function of any bodily member or organ, and/or prolonged hospitalization."

In this case, the evidence of facial fractures and bruising do not indicate there was a substantial risk of death, a permanent or protracted condition causing extreme pain, or a permanent or protracted loss or impairment of function of any bodily member or organ. N.C. Gen. Stat. § 14-32.4(a). Nor is there evidence of a prolonged hospitalization. *Id.* The injuries involved in this case do not constitute "serious bodily injury" as defined by statute and relayed to the jury.

The dissent suggests holding the evidence insufficient to support the jury's finding invades the province of the jury by reweighing the evidence. This mischaracterizes our analysis. Examining the evidence of Tim's injuries in the light most favorable to the State—facial fractures resulting in pain which lasted "a day or two" and bruising for a week—no reasonable juror could conclude Tim was at risk of death, that he suffered from a protracted period of extreme pain, a protracted loss of function, or that his hospitalization was prolonged. The dissent focuses on the brutality of the assault itself and describes Tim's injury in detail, but it is unable to describe any way in which the evidence shows the resulting injuries threatened Tim's life or caused permanent or protracted pain or loss of function. It cites to no prior

decision of our courts to support its conclusion that these injuries can constitute serious bodily injury. The dissent instead posits that because "Defendant relentlessly and repeatedly struck Tim's head and face, caused facial fractures, rendered him unconscious, and hospitalized him overnight" the jury was entitled to conclude "a substantial risk of death or a protracted condition causing extreme pain" thereby resulted. But the dissent cannot identify any evidence in the Record that these injuries *in fact* created a risk of death or any protracted condition, only evidence of the injuries themselves. Regardless of the extent of the victim's injuries, the question is whether the evidence can satisfy the statutorily defined element of the crime charged: that the *result* of the injuries included a risk of death or a protracted condition causing extreme pain or the loss or impairment of the function of a bodily member or organ. N.C. Gen. Stat. § 14-32.4(a); *see, e.g., Rushing,* 268 N.C. App. at 290, 836 S.E.2d at 265 (focusing analysis on ongoing impairment of victim's vision to determine substantial evidence of serious bodily injury was presented); *State v. Bohannon,* 247 N.C. App. 756, 762-63, 786 S.E.2d 781, 787 (2016) (evidence sufficient to support serious bodily injury when injuries to infant included brain hemorrhage that had potential to kill victim and would require continuous monitoring for future side effects). All evidence of the result of Tim's injuries, taken in the light most favorable to the State, indicate that he recovered quickly, was not in "extreme pain," and was not impaired for a protracted period. There is no evidence of a substantial risk of death. A jury could only conclude Tim's injuries in fact resulted in these harms

by relying on "suspicion or conjecture." *State v. Johnson*, 199 N.C. 429, 154 S.E. 730 (1930). Thus, there was not substantial evidence that Tim's injuries constitute "serious bodily injury" as defined by the General Assembly.

We agree the province of the jury should not be invaded and "when reasonable minds . . . might reach different conclusions, the evidence must be submitted to the jury." *State v. Clark,* 183 N.C. 733, 735 (1922). However, when no reasonable mind can conclude from the evidence a serious bodily injury occurred, we must vacate an erroneous conviction, as we have previously done. *See, e.g., State v. Williams,* 255 N.C. App. 168, 804 S.E.2d 570 (2017); *State v. Dixon,* 258 N.C. App. 78, 811 S.E.2d 705 (2018); *Williams,* 201 N.C. App. 161, 689 S.E.2d 412. While it is the province of the jury to weigh the evidence and determine the facts of the case, that province is not unlimited: the State must meet the minimum burden of producing substantial evidence of each element of a charge in order to submit that charge to the jury. *State v. Ashe*, 193 N.C. App. 569, 574, 668 S.E.2d 65, 69 (2008).

Thus, on the facts of this case, there was insufficient evidence to support the "serious bodily injury" element of the offense. Therefore, the trial court erred in denying Defendant's Motion to Dismiss the charge of Assault Inflicting Serious Bodily Injury. Consequently, we vacate that conviction.

The jury was also instructed on the lesser-included offense of misdemeanor Assault Inflicting Serious Injury. When a defendant is convicted of a crime involving the element of "serious bodily injury," but that element is not supported by sufficient

evidence, we remand for entry of judgment on a lesser-included offense if sufficient evidence supports each element of the lesser offense. *See State v. Williams*, 255 N.C. App. 168, 183, 804 S.E.2d 570, 579-80 (2017) (remanding for entry of judgment on lesser-included offense of Assault on a Law Enforcement Officer Inflicting Physical Injury as jury "clearly found Officer Smith sustained a 'physical injury' when it convicted Defendant of assault on a law enforcement officer inflicting serious bodily injury"); *State v. Dixon*, 258 N.C. App. 78, 87, 811 S.E.2d 705, 711 (2018) (remanding for entry of judgment on lesser-included offense of felony child abuse inflicting serious physical injury when evidence was insufficient to show serious bodily injury). *See also State v. Jolly*, 297 N.C. 121, 130, 254 S.E.2d 1, 7 (1979) (holding proper remedy for improperly denied motion to dismiss where only unproved element is element elevating the offense to the greater crime is vacatur of judgment and remand for entry of judgment on the lesser-included offense).

A defendant is guilty of misdemeanor Assault Inflicting Serious Injury if he 1) commits an assault which 2) inflicts serious injury upon another person. N.C. Gen. Stat. § 14-33(c)(1). "Serious injury" has been defined as a "physical or bodily injury." *State v. Everhardt*, 326 N.C. 777, 780, 392 S.E.2d 391, 392 (1990) (holding mental injury can also constitute serious injury). We have "declined to define" the term beyond this as "further definition seems neither wise nor desirable" and we have held the question of whether serious injury has been inflicted as dependent on the particular facts of each case and a question for the jury. *State v. Walker*, 204 N.C.

App. 431, 446, 694 S.E.2d 484, 495 (2010). The evidence of Tim's facial fractures is sufficient to support a finding of serious injury. *See, e.g., State v. Brunson*, 180 N.C. App. 188, 194, 636 S.E.2d 202, 206 (2006) (evidence supported finding of serious injury when victim of beating felt "pain all over" and suffered bruising, swelling, scratches, and black eyes); *State v. Alexander*, 337 N.C. 182, 189, 446 S.E.2d 83, 87-88 (cuts to arm from glass shattered by bullet constituted serious injury).

Because there is sufficient evidence to support a conviction for the lesser-included offense of misdemeanor Assault Inflicting Serious Injury, we remand to the trial court for entry of judgment and sentencing on the lesser charge.

II.    Evidence of Leg Injuries

Defendant next argues the trial court erred by admitting evidence relating to Nicole driving over Tim's legs and the resulting injuries. Defendant contends such evidence is irrelevant because Defendant was charged with assault for hitting Tim in the face and head, not with the truck which Nicole operated. Recognizing this, the trial court allowed Defendant's pretrial motion to exclude photographs of Tim's leg injuries and references in the medical records to leg injuries, finding such evidence was irrelevant and unfairly prejudicial. It ordered the same with regard to video showing the injuries.

At trial, the State introduced evidence which was not expressly excluded by the trial court's pretrial order, including witness testimony mentioning the truck driving over Tim, a 911 call, Ring camera footage, photographs of the truck, tire

tracks, and clothing that had been cut off to allow treatment to Tim's leg, law enforcement testimony describing locating the truck and processing it for evidence, Tim's testimony that he had some trouble walking following the incident, and redacted copies of Tim's medical records.

Defendant concedes he did not object when this evidence was admitted. Absent a party's objection, we review the admission of evidence for plain error.[2] *State v. Clark,* 380 N.C. 204, 209, 868 S.E.2d 56, 61 (2022). "To establish plain error defendant must show that a fundamental error occurred at his trial and that the error had a probable impact on the jury's finding that defendant was guilty." *Id.* (citing *State v. Towe,* 366 N.C. 56, 62, 732 S.E.2d 564, 568 (2012)). "Probable impact" means that, absent the error, "the jury probably would have returned a different result." *Towe,* 366 N.C. at 57, 732 S.E.2d at 565. In order to carry this burden, Defendant must show that outcome "is significantly more likely than not." *State v. Reber*, 386 N.C. 153, 159, 900 S.E.2d 781, 787 (2024). In arguing the trial court committed plain error by admitting this evidence, Defendant claims "the evidence focused heavily on the truck and contained dozens of references to the leg injuries sustained when [Tim] was run over," and that the trial court's pretrial exclusion of certain evidence related to Tim's

---

[2] The evidence at issue does not appear to fall within the scope of Defendant's pretrial objection and the trial court's resulting ruling. Regardless of whether it falls within that scope, we review its admission for plain error because Defendant did not renew his objection. "[A] trial court's evidentiary ruling on a pretrial motion is not sufficient to preserve the issue of admissibility for appeal unless a defendant renews the objection during trial." *State v. Oglesby*, 361 N.C. 550, 554, 648 S.E.2d 819, 821 (2007) (citations omitted).

injuries supports his argument this evidence was irrelevant and prejudicial.

The bulk of the evidence identified by Defendant describes or relates to Nicole's act of running over Tim's legs with the truck without reference to the nature of the resulting injuries or indeed whether any injury resulted at all. This primarily consists of witness testimony describing the sequence of events. Defendant also identifies evidence concerning the truck, including photographs of the truck and tire tracks and "two police officers whose only testimony was about finding the truck and processing it for evidence." It is unclear that this evidence is irrelevant to Defendant's charge, as "evidence is relevant if it tends to shed light upon the circumstances surrounding the [assault]." *State v. Hannah*, 149 N.C. App. 713, 722, 563 S.E.2d 1, 7 (2002). It is also unclear that this evidence is similar to that excluded by the pretrial order: the trial court excluded medical records and photographs of Tim's injuries as irrelevant but did not address the relevance of any evidence which only referenced the event of Nicole running over Tim's legs.

Even assuming the evidence is irrelevant, its admission cannot meet the "exacting prejudice standard required for plain error review." *Reber*, 386 N.C. at 160, 900 S.E.2d at 787. Defendant's only argument regarding this standard is that evidence of Tim being run over "consumed substantial trial time and unfairly magnified [Defendant's] criminality."

This does not rise to the level of prejudice necessary to demonstrate that "absent the error, the jury probably would have reached a different result." *Id.* Here,

the remaining evidence included testimony of multiple witnesses who observed Defendant striking Tim around the head and face. Moreover, the trial court specifically instructed the jury as to the conduct upon which it could base a conviction:

> The defendant has been charged with assault inflicting serious bodily injury.
>
> For you to find the defendant guilty of this offense, the State must prove two things beyond a reasonable doubt:
>
> First, that the defendant assaulted the victim by intentionally and without justification or excuse hit the alleged victim about the head and face with his fists.
>
> And second, that the defendant inflicted serious bodily injury. Serious bodily injury is injury that creates or causes a substantial risk of death, a permanent or protracted condition that causes extreme pain, permanent or protracted loss or impairment of the function of any bodily member or organ, and/or prolonged hospitalization.

Thus, the jury was instructed that only the conduct of striking Tim on the head and face could support the charge. Additionally, the evidence clearly showed Nicole, not Defendant, was driving the truck when it ran over Tim's leg, and the jury was instructed to consider only injuries "that the Defendant inflicted." "[T]his Court presumes that jurors follow the trial court's instructions." *State v. Steen*, 352 N.C. 227, 249, 536 S.E.2d 1, 14 (2000).

Defendant cites two cases to support his contention that admitting evidence of Nicole driving over Tim's leg was error: *State v. Moctezuma,* 141 N.C. App. 90, 539 S.E.2d 52 (2000) and *State v. McKnight*, 239 N.C. App. 108, 767 S.E.2d 689 (2015).

Neither of these cases involve assaults but are instead drug possession cases in which the trial courts admitted evidence of drugs, unrelated to the charge, which were found in dwellings associated with the defendants. In each, we held evidence of drugs unconnected with the defendant was not relevant to show knowledge under Rule 404(b). 141 N.C. App. at 94, 539 S.E.2d at 56; 239 N.C. App. at 121, 767 S.E.2d at 698. In neither case did we hold the error amounted to plain error: in *Moctezuma* we held the defendant was prejudiced under the harmless error standard, and in *McKnight* we held the error was insufficiently prejudicial to demonstrate plain error. 141 N.C. App. at 95, 539 S.E.2d at 56; 239 N.C. App. at 121-22, 767 S.E.2d at 698-99.

Putting aside the differences between drug and assault offenses, this case is distinct from *McKnight* and *Moctezuma* in that the jury in this case was aware Defendant did not commit the separate offense. Multiple witnesses testified Nicole was the person driving the truck, and there were no allegations that Defendant was the driver. Nicole testified that she pleaded guilty to assault with a deadly weapon. In the drug cases, by contrast, there was no indication of who had actually possessed the unrelated quantities of drugs, allowing the jury to impute the guilt represented by those drugs to the defendants. *See Moctezuma*, 141 N.C. App. at 95, 539 S.E.2d at 56 ("Despite the trial court's limiting instruction, the jury could have easily concluded . . . that defendant was a high level drug trafficker."). There is no such ambiguity here. Assuming the trial court erred by admitting evidence related to Nicole driving over Tim's legs, Defendant has not shown the jury probably would not have convicted

him absent the evidence, and has failed to demonstrate plain error.

Some of the evidence identified by Defendant relates not only to Nicole's act of driving over Tim's legs but additionally implies Tim was injured as a result. While the medical records introduced were redacted to remove references to any leg injury, unredacted portions indicate Tim's legs were examined during his treatment and include the results from x-rays taken of his legs. These results state "The bones are normal. No acute fractures . . . ." Tim testified, when asked about his injuries:

> I've just got to pay attention as to how fast I move or walk.
> I've got problems with that knee anyway, so if I walk too
> fast, I'm down.

As noted above, although evidence of the injuries themselves is more directly related to that which was excluded pretrial, without a renewal of the objection during trial we continue to review the admission for plain error. *Oglesby*, 361 N.C. at 554, 648 S.E.2d at 821 (2007).

While evidence of Nicole's act does not rise to the level of plain error, Defendant argues any evidence of the resulting injuries would be additionally prejudicial because the jury could have used those injuries to erroneously support a finding Tim had suffered serious bodily injury as a result of Defendant's assault. However, we have already determined there was insufficient evidence of serious bodily injury. Because the prejudice Defendant identifies "cannot have any practical effect on the existing controversy," this argument is moot. *State v. Joiner*, 273 N.C. App. 611, 614, 849 S.E.2d 106, 110 (2020).

Accordingly, Defendant has not shown the trial court committed plain error by admitting evidence of either Nicole running over Tim's legs or the injuries that resulted therefrom.

III.  Ring camera video

Defendant further argues the trial court erred by admitting ten video clips taken from Laura's motion-activated Ring camera which recorded portions of the altercation. Defendant moved pretrial to exclude the videos, arguing there were genuine questions as to their authenticity, and renewed that objection when the State moved to admit the videos. The trial court overruled the objection. Defendant argues the trial court erred in concluding the State had properly authenticated the video clips and that he was prejudiced by their admission because they only showed certain portions of the night's events: while the camera recorded video of Defendant striking Tim on the ground, it failed to show the events immediately leading up to that moment, including Tim pulling Nicole out of the truck and putting her in a choke hold.

"Where a videotape depicts conduct of a defendant in a criminal case, its potential impact requires the trial judge to inquire carefully into its authenticity, relevancy, and competency[.]" *State v. Billings,* 104 N.C. App. 362, 371, 409 S.E.2d 707, 712 (1991). Under Rule 901(a) of our Rules of Evidence, evidence must be authenticated by showing "that the matter in question is what its proponent claims." N.C. Gen. Stat. § 8C-1, Rule 901(a). As Defendant recognizes, trial court decisions to

admit evidence are generally reviewed for abuse of discretion. *Brown v. City of Winston-Salem,* 176 N.C. App. 497, 505, 626 S.E.2d 747, 753 (2006). However, trial court determinations as to whether evidence has been properly authenticated are reviewed de novo on appeal as a question of law. *State v. Crawley*, 217 N.C. App. 509, 515, 719 S.E.2d 632, 637 (2011). When the trial court has admitted video evidence, we review that admission to determine whether "there was sufficient evidence for the trial judge to find that the State had laid a proper foundation to introduce the videotape into evidence for either substantive or illustrative purposes." *State v. Cannon,* 92 N.C. App. 246, 254, 374 S.E.2d 604, 609 (1988), *rev'd on other grounds,* 326 N.C. 37, 387 S.E.2d 450 (1990).

The admissibility of video evidence is governed by the same rules that apply to still photographs, and videos similarly may be admitted for either illustrative or substantive purposes. *State v. Mason*, 144 N.C. App. 20, 24, 550 S.E.2d 10, 14 (2001). "Recordings such as a tape from an automatic surveillance camera can be authenticated as the accurate product of an automated process under Rule 901(b)(9)." *State v. Snead*, 368 N.C. 811, 814, 783 S.E.2d 733, 736 (2016) (citing 2 Kenneth S. Broun et al., *McCormick on Evidence* § 216, at 39–40 (7th ed.2013)). When, as in this case, the evidence is introduced for substantive purposes, "[e]vidence that the recording process is reliable and that the video introduced at trial is the same video that was produced by the recording process is sufficient to authenticate the video and lay a proper foundation for its admission as substantive evidence." *Id.* For example,

in *Snead* this requirement was met when a regional loss prevention manager testified:

> that he was familiar with how Belk's video surveillance system worked, that the recording equipment was "industry standard," that the equipment was "in working order" on 1 February 2013, and that the videos produced by the surveillance system contain safeguards to prevent tampering. Moreover, Steckler established that the video introduced at trial was the same video produced by the recording process[.]

*Id.*

Defendant argues the State failed to produce evidence sufficient to support either requirement under this authentication method: (1) that the video introduced at trial is the same as that produced by the recording process; and (2) that the recording process is reliable.

To support his argument there was insufficient evidence the video introduced at trial is the same as that produced by the recording process, Defendant alleges "no witness was able to say the videos introduced at trial were identical to those produced by the Ring camera." However, Laura testified there was no way to modify the video clips, that she had not changed or hidden any of them, and that she handed Detective Fuller her phone and allowed him to scroll through all the videos. Detective Fuller testified he used his phone camera to record all the video clips Laura provided him. Laura identified State's Exhibit 66 as "all the videos that the officer got from my camera." Taken together, this testimony is sufficient evidence to support a finding

that the video introduced at trial is the same as that produced by the recording process.

There must also be sufficient evidence the recording process was reliable. In *Snead,* testimony that the recording equipment was "industry standard," in "working order," and contained safeguards to prevent tampering was sufficient to meet this burden. 368 N.C. at 814, 783 S.E.2d at 736. Similarly, we have held the State had provided sufficient evidence of reliability through a police officer's testimony that "the surveillance video system was functioning properly at the time." *State v. Fleming*, 247 N.C. App. 812, 818, 786 S.E.2d 760, 766 (2016).

In this case, Laura similarly testified the Ring camera was working on the night in question and that it records video when it detects motion. She testified that the video clips were stored on her phone, where they are retained for approximately ten days. When first asked about the camera, she stated that it would record for 20 seconds upon detecting motion, but on cross-examination noted that sometimes it recorded in 10-second increments.

Witness testimony that a surveillance system was functioning properly, without more, may not be sufficient to support a finding of reliability when there is some other indication the system is not reliable. In *State v. Mason*, for example, the surveillance system in question failed at some point in the six months following the robbery at issue in the case, requiring replacement of the incorporated VCR. 144 N.C. App. 20, 23, 550 S.E.2d 10, 13 (2001). Two store employees expressed the opinion that

the store surveillance system was working the night of the robbery. Although one had

some knowledge relating to the operation of the system, when asked about the VCR

he answered the system used "a preprogrammed time-lapse VCR recorder and I am

not technically minded enough to tell you how the doggone thing works." *Id.* The other

testified "she could not even operate her home VCR." *Id.* at 26, 550 S.E.2d at 15.

Because "neither one knew anything about the maintenance or operation of the

camera system," we held there was insufficient evidence to establish the system was

properly functioning at that time:

> None of the State's witnesses gave testimony to indicate that there was any routine maintenance or testing of the Eckerd's security system. Nor was there testimony from any witness that the tapes made on days immediately preceding and following the robbery had been examined. The evidence presented at trial was insufficient to establish that the store security system was properly functioning on 8 January 1998.

*Id.*

In this case, there was no evidence the Ring camera system malfunctioned, and

Laura testified as to how the system worked without expressing confusion like that

shown by the witnesses in *Mason*. That testimony along with her testimony that the

system was working at the time, like that in *Snead* and *Fleming,* was sufficient to

support a finding the recording process was reliable.

Defendant argues, however, that the gaps between recorded segments indicate

the recording process was unreliable. Each of the ten video clips introduced as

evidence was ten seconds in length, with recording gaps ranging from less than ten seconds to over a minute between clips. The first clip begins at timestamp 20:01:54, and the last clip ends at 20:08:18, meaning the camera recorded one minute and forty seconds of a six minute and twenty-four second time period. When asked, Laura was unable to explain why there were gaps in the recording during moments when movement was occurring.

However, gaps in coverage of video surveillance recordings do not necessarily render the recording process unreliable for the purpose of authentication. A gap in footage does not indicate the video is not "what it purports to be." *Snead,* 386 N.C. at 815, 783 S.E.2d at 737. The video footage which was actually recorded still may constitute relevant, authenticated, and admissible evidence, with any gaps more properly affecting the weight assigned to the video by the finder of fact. In *Bowman v. Scion*, for example, we held the Industrial Commission erred by excluding surveillance video which skips and freezes for approximately 3 seconds at the moment of the plaintiff's injury, such that that no part of his fall was recorded. 224 N.C. App. 1, 13, 737 S.E.2d 384, 391 (2012). Although a critical span of footage had not been recorded, we held this more properly impacted the weight of the video evidence, not its admissibility. *Id.* at 13, 737 S.E.2d at 392. Accordingly, we instructed the Industrial Commission to admit the video into evidence and enter an order taking into account all evidence in the record, including the video. *Id.* at 14, 737 S.E.2d at 392.

Although our courts have not had further opportunity to address authentication of surveillance video with alleged recording gaps, this approach appears to comport with that of other jurisdictions. In *Henderson v. State,* for example, surveillance camera footage of a fire contained what the defendant argued were "critical gaps," in which the motion-activated cameras failed to record vehicles arriving onto the property or cut off recording during ongoing motion. No. CR-21-0044, 2024 WL 1946585 (Ala. Crim. App. 3 May 2024). However, those gaps went to the weight to be afforded the videos, not their admissibility.[3] *Id.* at \*25 (citing *Capote v. State*, 323 So. 3d 104, 134 (Ala. Crim. App. 2020) (noting that a video is not rendered inadmissible simply because it "does not show a continuity of action")).

The gaps in recording in this case do not indicate the existing footage was not "what its proponent claims." N.C. R. Evid. 901(a). Thus, there was sufficient evidence in the record for the trial court to conclude the recording process was reliable and that the videos produced at trial were those produced by the recording process. Therefore, the video clips were properly authenticated. Consequently, the trial court did not err by admitting the Ring camera footage.

IV.  Flight Instruction

---

[3] In some situations, it may be appropriate for a trial court, particularly during a jury trial, to recognize significant recording gaps so impact the probative value of the evidence or the weight to be given a video recording that it determines it necessary to exclude that recording as irrelevant or because of the danger of unfair prejudice or misleading the jury. Here, though, the only issue before this Court is the authentication of the video clips.

Defendant also argues the trial court erred by instructing the jury on flight. Defendant objected to the flight instruction during the charge conference, and the trial court overruled the objection. We review *de novo* the trial court's issuance of an instruction over Defendant's objection. *State v. Parker*, 290 N.C. App. 650, 657, 893 S.E.2d 544, 549 (2023). A flight instruction is properly given if there is "some evidence in the record reasonably supporting the theory that the defendant fled after the commission of the crime charged." *State v. Fisher*, 336 N.C. 684, 706, 445 S.E.2d 866, 878 (1994).

The evidence showed Defendant, after assaulting Tim, got into the passenger's seat of his truck without attempting to render aid. Nicole immediately drove the truck away while Tim was on the ground, driving over his leg. Nicole drove them to a field near her home, where they slept in the truck until found by law enforcement the next day.

Evidence of a defendant's flight from the scene of a crime does not create a presumption of guilt but is generally relevant to consider with other factors to determine whether the circumstances "amount to an admission of guilt or reflect a consciousness of guilt." *State v. Lampkins*, 283 N.C. 520, 523, 196 S.E.2d 697, 698 (1973). "Mere evidence that defendant left the scene of the crime is not enough to support an instruction on flight. There must also be some evidence that defendant took steps to avoid apprehension." *State v. Thompson*, 328 N.C. 477, 490, 402 S.E.2d 386, 490 (1991).

Defendant argues primarily the instruction on flight was erroneous because he was not the driver of the truck and there was no evidence he directed Nicole to leave the scene or where to go. He also notes he did not engage in other activities commonly recognized as additional steps to avoid apprehension, such as changing his appearance to conceal his identity or leaving the county or state. *See, e.g., Fisher*, 336 N.C. at 706, 445 S.E.2d at 878; *State v. Allen*, 346 N.C. 731, 741, 488 S.E.2d 188, 193 (1997).

The fact that Defendant was not the driver of the vehicle does not mean the evidence cannot support a flight instruction. *See, e.g., State v. Reeves,* 343 N.C. 111, 113, 468 S.E.2d 53, 55 (1996) (evidence supported flight instruction when defendant ran from the scene of the crime, got in a car waiting nearby, and was driven away); *State v. Bradford*, 252 N.C. App. 371, 377, 798 S.E.2d 546, 550 (2017) (evidence sufficient to support flight when defendant was passenger in car that sped away from gas station after shooting).

There is also evidence Defendant took additional steps to avoid apprehension. Defendant left the scene without attempting to render aid to Tim. *See State v. Lloyd*, 354 N.C. 76, 120, 552 S.E.2d 596, 626 (2001) (evidence supported flight instruction when defendant "sped away from the scene of the crime" without rendering aid before calling law enforcement to arrange a surrender). Although Defendant was not driving the truck, he immediately got in after concluding the assault and allowed Nicole to drive away, which she did quickly and recklessly enough that she ran over Tim's leg.

There is no evidence Defendant attempted to stop Nicole or have her return to Laura's house. Defendant at no point attempted to contact law enforcement or emergency services to obtain medical assistance for Tim. He then chose to spend the night in the truck in a field rather than returning home. *See State v. Shelly*, 181 N.C. App. 196, 209, 638 S.E.2d 516, 526 (2007) (spending the night away from home could be viewed as a step to avoid apprehension as it was "an action that was not part of Defendant's normal pattern of behavior").

Thus, "[t]he evidence of defendant's behavior in the aftermath of the [assault] establishes that he did more than merely leave the scene of the crime and is sufficient to support a finding of consciousness of guilt[.]" *Id.* Therefore, there is evidence in the record reasonably supporting the theory that Defendant fled after the commission of the crime charged. Consequently, the trial court did not err by instructing the jury on flight.

## V.   Defense of a Motor Vehicle

Defendant last argues the trial court erred by declining to instruct the jury on defense of a motor vehicle. We review challenges to trial court decisions regarding jury instructions *de novo*. *State v. Osorio*, 196 N.C App. 458, 466, 675 S.E.2d 144, 149 (2009). Trial courts have a duty "to instruct the jury on all substantial features of a case raised by the evidence." *State v. Shaw*, 322 N.C. 797, 803, 370 S.E.2d 546, 549 (1988). Defense of a motor vehicle is codified in our self-defense statutes. N.C. Gen. Stat. § 14-51.2(b). "When supported by competent evidence, self-defense

unquestionably becomes a substantial and essential feature of a criminal case." *State v. Parks,* 264 N.C. App. 112, 115, 824 S.E.2d 881, 884 (2019) (citation omitted). To determine if there is sufficient evidence to support an instruction for self-defense, "we take the defendant's evidence as true and consider it in the light most favorable to the defendant." *Id.*

The statute provides an affirmative defense when the lawful occupant of a motor vehicle uses defensive force in certain circumstances:

> The lawful occupant of a home, motor vehicle, or workplace is presumed to have held a reasonable fear of imminent death or serious bodily harm to himself or herself or another when using defensive force that is intended or likely to cause death or serious bodily harm to another if both of the following apply:
>
> (1) The person against whom the defensive force was used was in the process of unlawfully and forcefully entering, or had unlawfully or forcefully entered, a home, motor vehicle, or workplace, or if that person had removed or was attempting to remove another against that person's will from the home, motor vehicle, or workplace.
>
> (2) The person who uses defensive force knew or had reason to believe that an unlawful or forcible entry or unlawful and forcible act was occurring or had occurred.

N.C. Gen. Stat. § 14-51.2(b). Accordingly, "A person who uses force as permitted by this section is justified in using such force and is immune from civil or criminal liability for the use of such force[.]" *Id.* § 14-51.2(e).

The evidence, taken in the light most favorable to Defendant, shows Tim forcibly entered Defendant's truck, removed Nicole from the driver's seat against her

will, and put her in a choke hold on the ground. Defendant approached them from where he had been sitting near the house and struck Tim. The trial court reasoned, and the State argues on appeal, a defense of motor vehicle instruction was inappropriate because Defendant was not in the motor vehicle when Tim forcibly entered it and was therefore not an "occupant" for the purposes of Section 14-51.2.[4] We agree with the trial court's reasoning.

We recently examined the meaning of "occupant" as used in this statute, holding that in specific circumstances it may encompass a person not physically located within their home or vehicle when they apply defensive force. *See State v. Williams*, 297 N.C. App. 512, 911 S.E.2d 286 (2024), *review allowed,* 918 S.E.2d 635 (N.C. 2025). In *Williams* the evidence, taken in the light most favorable to the defendant, showed he was sitting in his vehicle when the victim opened his door and repeatedly punched him in the face. *Id.* at 528, 911 S.E.2d at 298. The victim was armed with a gun, and he continued punching the defendant even after the defendant had successfully disarmed him. *Id.*, 911 S.E.2d at 299. The defendant exited the vehicle and stood up; the victim came around to where he stood and continued attacking him. *Id.* While standing directly next to the driver's side door and still under attack, the defendant shot the victim twice. *Id.*

Our analysis of whether the instruction was required in *Williams* hinged on

---

[4] We note the jury was instructed on defense of another.

whether the defendant was still an "occupant" of the vehicle after exiting it. We noted that although the words "operator" and "owner" were statutorily defined, the legislature had chosen to use the term "occupant," which it did not define. *Id.* at 523, 911 S.E.2d at 295 (citing N.C. Gen. Stat. § 20-4.01(1), (23a), (27)b., (46a).)[5] We held the term "occupant" was ambiguous, and examined the language, object, and spirit of the self-defense statute to effectuate legislative intent. *Id.* at 525, 911 S.E.2d at 296. The statute broadens the common law in multiple ways: by applying it to vehicles as well as the home, and by including circumstances in which an assailant "had removed" a lawful occupant. *Id.* at 525, 911 S.E.2d at 297. We noted a foundational principle of common law self-defense allows an occupant to defend their home against an intruder, and that "the law does not require such householder to flee or to remain in his house until his assailant is upon him, but he may open his door and shoot his assailant." *Id.* (citing *State v. Blue*, 356 N.C. 79, 86-87, 565 S.E.2d 133, 138 (2002)). Accordingly, we held "the lawful occupant, under specific circumstances—including those where he is *no longer within* the home, motor vehicle, or workplace—may exercise deadly defensive force against his assailant." *Id.* at 527, 911 S.E.2d at 298 (emphasis in original).

---

[5] We also noted the term "occupant," as used in the context of the Fourth Amendment right against searches and seizures and includes situations where a defendant is "in the immediate vicinity of, and close enough such that he could have access to, the residence," is inapplicable to the self-defense context. *Id., distinguishing State v. Tripp*, 381 N.C. 617, 619, 631-32, 873 S.E.2d 298, 302, 308-09 (2022).

*Williams* recognizes the defense may apply to the use of force by a person "no longer within" the home or vehicle. *Id.* Unlike in *Williams,* however, in this case Defendant was not "inside [the] motor vehicle at the time of an unlawful and forceful entry of the vehicle by another person." *Id.* at 533, 911 S.E.2d at 301 (Stroud, J., concurring). Instead, the evidence, taken in the light most favorable to Defendant, showed that he approached his vehicle only after Tim had removed Nicole from the driver's seat. Because he was not within the vehicle during any portion of Tim's intrusion into it, he is not an "occupant" of the vehicle for the purposes of the statute.

Therefore, Defendant was not an occupant of the motor vehicle. Thus, Defendant does not fall under the coverage of the defense of motor vehicle statute. Consequently, the trial court did not err by refusing to instruct the jury on defense of a motor vehicle.

## **Conclusion**

Accordingly, for the foregoing reasons, we vacate Defendant's conviction for Assault Inflicting Serious Bodily Injury. The matter is remanded for sentencing on the lesser-included offense of Assault Inflicting Serious Injury. The trial court did not err in the evidentiary or jury instruction issues raised by Defendant.

NO ERROR IN PART; VACATED IN PART AND REMANDED.

Judge ZACHARY concurs. Judge MURRY concurs in part and dissents in part by separate opinion.

MURRY, Judge, concurring in part and dissenting in part.

I concur in parts II, III, IV, and V of the majority opinion that the trial court did not err by admitting evidence of Nicole driving over Tim's leg and the resulting injuries; by admitting footage from the Ring camera over Defendant's foundation objection; by instructing the jury on flight; and by refusing to instruct the jury on Defense of a Motor Vehicle, respectively. But I respectfully dissent in part I of the majority opinion holding that the trial court erred by denying Defendant's motion to dismiss for insufficient evidence. I would instead hold that the trial court properly submitted to the jury the question of whether a "serious bodily injury" occurred. N.C.G.S. § 14-32.4(a) (2025).

The dispositive question on this final point is whether the State presented substantial evidence from which a jury could "*reasonably*" infer that Tim suffered serious bodily injury, *State v. Johnson*, 199 N.C. 429, 431 (1930) (emphasis added), *i.e.*, an "injury that create[d] or cause[d] a substantial risk of death, a permanent or protracted condition that cause[d] extreme pain, permanent or protracted loss or impairment of the function of any bodily member or organ, and/or prolonged hospitalization." The question is not whether the evidence *compels* that conclusion. The majority holds that "insufficient evidence . . . support[s] the 'serious bodily injury' element of the offense" because Tim's injuries are not *serious bodily injury* "as defined by statute and relayed to the jury." In my view, this holding applies the wrong

standard of review and "invade[s]" "the province of the jury." *State v. Prince*, 182 N.C. 788, 790 (1921).

When determining the substantiality of the evidence, we must view the evidence "in the light most favorable to the State," give it "the benefit of every reasonable inference[,] and resolv[e] any contradictions in its favor." *State v. Dover*, 381 N.C. 535, 547 (2022). Substantial evidence is any "relevant evidence" that "tend[s] to prove guilt or which reasonably leads to this conclusion as a fairly logical and legitimate deduction . . . beyond a reasonable doubt." *State v. Franklin*, 327 N.C. 162, 171–72 (1990). Where the record contains "a[ny] combination" of "substantial evidence, whether direct or circumstantial . . . to support a finding that . . . the defendant committed" "the offense charged," "the case is for the jury and the motion to dismiss should be denied." *State v. Winkler*, 386 N.C. 572, 574 (2015) (quoting *State v. Golphin*, 352 N.C. 364, 458 (2000)). Put differently, we review only the evidence's sufficiency for the jury, not its weight or credibility. *See State v. Fritsch*, 351 N.C. 373, 379 (2000).

Our task is to analyze the State's evidence, and the State offered evidence of Tim's injuries. In my opinion, "the brutality of the assault itself" helps to show how and why Tim suffered head trauma, facial fractures, loss of consciousness, significant pain, and overnight hospitalization. At trial, he testified to partially losing consciousness due to Defendant's initial blow and fading out of consciousness as Defendant continued to strike him. Even after Tim fell to the ground and pleaded for

Defendant to stop, Defendant continued to strike him as multiple witnesses unsuccessfully attempted to intervene. Tim was transported to the hospital that night and remained hospitalized overnight. He testified that Defendant beat him to the point that he suffered a bloody nose and black and blue bruising under his eye that lasted for up to a week. Tim further testified that he experienced "quite a bit" of pain while in the hospital and for several days thereafter, and that he was prescribed pain medication as a result of the pain. The State also introduced Tim's medical records showing an acute fracture of his right orbit's inferior wall (fractured eye socket), an acute comminuted fracture of his right maxillary sinus's posterior wall (broken cheek bone), and a parietal scalp hematoma (lacerated scalp). I believe a jury could "reasonabl[y] infer[ ]" injuries statutorily serious enough to withstand a motion to dismiss. *State v. Ash*, 193 N.C. App. 569, 574–75 (2008).

The majority concludes that the State's evidence "does not demonstrate that there was either a prolonged hospitalization, a substantial risk of death, loss or impairment of the function of any bodily member or organ, or that Tim suffered from a 'permanent or protracted condition' that caused extreme pain" because Tim testified that he was released from the hospital next day and did not suffer lasting impairment as a result of his injuries. The majority suggests that we are to determine whether the "*result* of the injuries included a risk of death or a protracted condition causing extreme pain" "[r]*egardless* of the extent of the victim's injuries." (Emphases added.) But I would hold that the jury—sitting as the factfinder—can do so *in light of* the

3

extent of the victim's injuries. Tim's testimony that his pain resolved within days and that he did not have the prescribed pain medication prescription filled does not negate the jury's ability to infer the seriousness of the injuries at the time Defendant inflicted them. *See Franklin*, 327 N.C. at 171–72.

Applying the proper standard of review by viewing this evidence "in the light most favorable to the State," I would hold that the State presented sufficient evidence from which a reasonable jury *could* have inferred—and, in fact, *did* infer—that Defendant created a substantial risk of death or a protracted condition causing extreme pain. *State v. Rose*, 339 N.C. 172, 192 (1994). I decline to invade the jury's province by reweighing the evidence and inferring otherwise on appeal. *See State v. Chekanow*, 370 N.C. 488, 499 (2018) ("[E]vidence is . . . certainly not for the appellate court to reweigh . . . ."). I would hold that the trial court properly denied Defendant's motion to dismiss his charge of assault inflicting serious bodily injury. The case was properly submitted to the jury to weigh the evidence. After deliberation, the jury returned a guilty verdict on assault inflicting serious bodily injury and I would decline to reverse this result. Thus, I respectfully dissent in part.